**MORGAN, LEWIS & BOCKIUS LLP**
Joseph E. Floren, Bar No. 168292
joseph.floren@morganlewis.com
One Market Street
Spear Street Tower
San Francisco, CA  94105-1596
Telephone: (415) 442-1391
Fax: (213) 612-2501

**MORGAN, LEWIS & BOCKIUS LLP**
G. Jeffrey Boujoukos (pro hac vice)
jeff.boujoukos@morganlewis.com
1701 Market Street
Philadelphia, PA  19103-2921
Telephone: (215) 963-5000
Fax: (215) 963-5001

**MORGAN, LEWIS & BOCKIUS LLP**
Jason S. Pinney (pro hac vice)
jason.pinney@morganlewis.com
Andrew M. Buttaro (pro hac vice)
andrew.buttaro@morganlewis.com
One Federal Street
Boston, MA  02110-1726
Telephone: (617) 341-7700
Fax: (617) 341-7701

Attorneys for Defendant
WESTERN INTERNATIONAL
SECURITIES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>WESTERN INTERNATIONAL SECURITIES, INC., NANCY COLE, PATRICK EGAN, ANDY GITIPITYAPON, STEVEN GRAHAM, and THOMAS SWAN,<br><br>Defendants. | Case No. 2:22-cv-04119-ODW-AFM<br><br>**DEFENDANT WESTERN INTERNATIONAL SECURITIES, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES**<br><br>Date: November 21, 2022<br>Time: 1:30 p.m.<br>Place: Courtroom 5D, 5th Floor<br>Judge: Hon. Otis D. Wright, II |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 4

LEGAL STANDARD .................................................................................................. 8

ARGUMENT .............................................................................................................. 9

    I.     The SEC Cannot Meet the Demanding Motion to Strike Standard ..................................................... 9

        A.    The SEC Is Not Entitled to a Presumption Against Affirmative Defenses .............................. 9

        B.    WIS's Fair Notice Defense Is Adequately Pleaded and Legally Supported .......................... 10

            1.    WIS Has a Due Process Right to Fair Notice ............... 10

            2.    Reg BI Is a Rule, Not a Statute .................................... 11

            3.    WIS Pleaded Sufficient Facts to Establish a Fair Notice Defense ........................ 12

                a.    This Is the First Reg BI Enforcement Case, and That Matters ................... 13

                b.    A 770 Page Adopting Release Is Not *Per Se* Fair Notice ....................... 14

                c.    The FINRA Exam Further Demonstrates the Lack of Fair Notice ................ 14

                d.    The SEC Is Bound by the Allegations of Its Complaint .............................. 15

        C.    WIS's Void-for-Vagueness Defense Is Adequately Pleaded ........................ 17

        D.    WIS's Selective-Enforcement Defense Is Adequately Pleaded and Legally Supported .......................... 18

            1.    A Selective Enforcement Defense Is Proper When the Government Impermissibly Singles Out a Defendant .......................... 18

            2.    The SEC's Factual Argument Ignores the Rule 12(f) Standard and WIS's Well-Pleaded Allegations .......................... 19

3.   There is No Categorical Bar Precluding Inquiry Into the SEC's "Internal Processes." .................20

E.   WIS's Affirmative Defense of Failure to State a Claim is Proper .............................................20

F.   WIS's Affirmative Defense Reserving Rights Is Proper..........22

G.   The Possibility of Discovery Is Not an Adequate Basis to Strike WIS's Affirmative Defenses ........................................23

CONCLUSION..............................................................................................24

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## TABLE OF AUTHORITIES

**Case**                                                                                                    **Page(s)**

*In re 2TheMart.com, Inc., Sec. Litig.*,
    114 F. Supp. 2d 955 (C.D. Cal. 2000)............................................................... 8, 13

*Barkhordar v. Century Park Place Condo. Ass'n*,
    No. 216CV03071CASEX, 2016 WL 6102323
    (C.D. Cal. Oct. 18, 2016)........................................................................................ 22

*Baroness Small Estates, Inc. v. BJ's Restaurants, Inc.*,
    No. 8:11-cv-00468-JST-E, 2011 WL 3438873
    (C.D. Cal. Aug. 5, 2011) ........................................................................................ 21

*Christopher v. SmithKline Beecham Corp.*,
    567 U.S. 142 (2012) ......................................................................................... 11, 12

*Clean Safety, Inc. v. Ruby Trucking LLC*,
    No. 521CV00225JWHSPX, 2021 WL 5935478
    (C.D. Cal. July 27, 2021)........................................................................................ 22

*CFPB v. Noh*,
    No. 821CV00488JWHADSX, 2022 WL 3574284
    (C.D. Cal. July 21, 2022).................................................................................... 8, 22

*EEOC v. Evans Fruit Co.*,
    No. CV-10-3033-LRS, 2012 WL 442025
    (E.D. Wash. Feb. 10, 2012) ................................................................................... 20

*EEOC v. Chic. Miniature Lamp Works*,
    526 F. Supp. 974 (N.D. Ill. 1981)......................................................................... 20

*FCC v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012) ......................................................................................... 10, 23

*FDIC v. GB Escrow, Inc.*,
    No. 11-05318 ODW JCG, 2011 WL 4550831
    (C.D. Cal. Sept. 28, 2011) ...............................................................................*passim*

*FTC v. Wyndham Worldwide Corp.*,
    799 F.3d 236 (3d Cir. 2015) ............................................................................. 12, 13

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*FDIC v. Reis*,
No. SACV122212JSTANX, 2013 WL 12126777
(C.D. Cal. Sept. 5, 2013) ................................................................................22

*First Nat'l Ins. Co. of Am. v. Peralta Cmty. Coll. Dist.*,
No. 12-05943 JSC, 2013 WL 622944 (N.D. Cal. Feb. 15, 2013).......................2

*Gay Men's Health Crisis v. Sullivan*,
733 F. Supp. 619 (S.D.N.Y. 1989) ...................................................................17

*GEOMC Co., Ltd. v. Calmare Therapeutics*,
918 F.3d 92 (2d Cir. 2019) ...............................................................................23

*Gonzales v. Carhart*,
550 U.S. 124 (2007) ..........................................................................................17

*Hernandez v. Balakian*,
No. CV-F-06-1383 OWW/DLB, 2007 WL 1649911
(E.D. Cal. June 1, 2007) ...................................................................................21

*Indep. Ins. Agents & Brokers of N.Y., Inc. v*
*N.Y. State Dep't of Fin. Servs.*,
2022 WL 11361424 (N.Y. Oct. 20, 2022)........................................................17

*J & J Sports Prods., Inc. v. Luhn*,
Civ. No. 2:10–3229 JAM CKD, 2011 WL 5040709
(E.D. Cal. Oct. 24, 2011) ..................................................................................23

*Meggitt (San Juan Capistrano), Inc. v. Nie*,
No. SACV130239DOCDFMX, 2014 WL 12589109
(C.D. Cal. Jan. 28, 2014) ..................................................................................21

*Miles v. Kirkland's Stores, Inc.*,
No. EDCV1801559CJCSHKX, 2018 WL 10879443
(C.D. Cal. Sept. 12, 2018) ................................................................................23

*NICOR, Inc. v. SourceBlue, LLC, Infinilux Corp.*,
No. 2:21-CV-05300-AB-PD, 2021 WL 6618620
(C.D. Cal. Dec. 16, 2021) .................................................................................22

*Park v. Kitt*,
No. 119cv01551, 2021 WL 1210364 (E.D. Cal. Mar. 31, 2021).......................21

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

WESTERN'S OPP. TO MOT. TO STRIKE
2:22-CV-04119-ODW

*Phelps Dodge Corp. v. Federal Mine Safety & Health Review Comm'n*,
681 F.2d 1189 (9th Cir. 1982)................................................................2, 11, 14

*Platte Anchor Bolt, Inc. v. IHI, Inc.*,
352 F. Supp. 2d 1048 (N.D. Cal. 2004)..............................................................8

*Saniefar v. Moore*,
No. 117cv00823, 2018 WL 3020458 (E.D. Cal. June 18, 2018)................20, 21

*SEC v. Am. Growth Funding II, LLC*,
No. 16CV00828 (KMW) (DF), 2016 WL 8314623
(S.D.N.Y. Dec. 30, 2016) ...................................................................................10

*SEC v. Cuban*,
798 F. Supp. 2d 783 (N.D. Tex. 2011)...............................................................24

*SEC v. Gold Standard Mining Corp.*,
No. CV 12-5662 PA (CWX), 2012 WL 12904080
C.D. Cal. Dec. 10, 2012) ...................................................................................20

*SEC v. KPMG LLP*,
No. 03 CIV. 671 (DLC), 2003 WL 21976733
(S.D.N.Y. Aug. 20, 2003)...................................................................................10

*SEC v. Ripple Labs Inc*.
No. 20 Civ. 10832, 2022 WL 748150 (S.D.N.Y. Mar. 11, 2022)...............*passim*

*TSX Toys, Inc. v. 665, Inc.*,
No. EDCV1402400RGKDTBX, 2015 WL 12746211
(C.D. Cal. Sept. 23, 2015) .................................................................................22

*United States v. Approx. 64,695 Pounds of Shark Fins*,
520 F.3d 976 (9th Cir. 2008)........................................................................10,11

*United States v. Armstrong*,
517 U.S. 456 (1996) ...........................................................................................18

*United States v. McGraw- Hill Co., Inc.*,
No. CV 13-779-DOC-JCGX, 2014 WL 1647385
(E.D. Cal. Apr. 15, 2014) ...................................................................................18

*Upton v. SEC*,
75 F.3d 92 (2d Cir. 1996) ...................................................................................13

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
455 U.S. 489 (1982) ..................................................................................................18

*Vill. of Willowbrook v. Olech*,
528 U.S. 562 (2000) ..................................................................................................18

*Vistan Corp. v. Fadei USA, Inc.*,
No. C-10-4862 JCS, 2011 WL 1544796 (N.D. Cal. Apr. 25, 2011)..................21

*In re Volkswagen "Clean Diesel" Mktg.,*
*Sales Pracs., & Prod. Liab. Litig.*,
517 F. Supp. 3d 994 (N.D. Cal. 2021)...............................................................10

*Wyshak v. City Nat'l Bank*,
607 F.2d 824 (9th Cir. 1979)........................................................................7,9

*Zivkovic v. S. California Edison Co.*,
302 F.3d 1080 (9th Cir. 2002).........................................................................22

**Authorities**

Fed. R. Civ. P. 7(a) ...................................................................................................21

Fed. R. Civ. P. 8(c) ...................................................................................................17

Fed. R. Civ. P. 12 ................................................................................................*passim*

Fed. R. Civ. P. 15.....................................................................................................23

SEC 2021 Examination Priorities (Mar. 3, 2021) ...................................................5

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Defendant Western International Securities, Inc. ("WIS") submits this opposition to the Securities and Exchange Commission's ("SEC") motion to strike (ECF No. 56) (the "Motion") five of the eight affirmative defenses WIS asserted in its answer (ECF No. 45) (the "Answer") and responds to the SEC's memorandum in support of its Motion (ECF No. 57) (the "Memorandum") as follows.

## INTRODUCTION

"Motions to strike are generally regarded with disfavor." *FDIC v. GB Escrow, Inc.*, No. 11-05318 ODW JCG, 2011 WL 4550831, at *1 (C.D. Cal. Sept. 28, 2011). Where a movant challenges the legal sufficiency of an answer, as the SEC does here, "the court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed." *Id.* at *2. The SEC cannot meet this exacting standard. Accordingly, its Motion should be denied.

The SEC argues that courts "routinely" grant SEC motions to strike affirmative defenses like the due process challenge asserted by WIS in this case. Mem. at 3. This is simply incorrect, as the SEC recently learned. Earlier this year, the SEC filed a similar motion to strike a fair notice affirmative defense in a case pending before the United States District Court for the Southern District of New York captioned: *SEC v. Ripple Labs Inc.*, No. 20 Civ. 10832, 2022 WL 748150 (S.D.N.Y. Mar. 11, 2022). In *Ripple*, after rejecting many of the arguments that the SEC makes here, the court concluded: "In short, the SEC has cited no caselaw where a court has stricken a fair notice affirmative defense at the pleadings stage, and the Court is not persuaded that doing so is appropriate here." *Id.* at *4. The same is true here, and the same reasoning applies.

The SEC also mistakenly relies on case law regarding enforcement of a *statute* to argue for a presumption against affirmative defenses in actions like this one involving a government agency. Mem. at 3. To be clear, the SEC regulation at issue in this case, Regulation Best Interest ("Reg BI"), is a *rule*—not a statute—and the

cases on which the SEC relies are inapposite. In fact, the SEC's argument gets it exactly backwards. The law is clear that the presumption is against the *SEC*—not WIS—in moving to strike an affirmative defense. *See*, *e.g.*, *First Nat'l Ins. Co. of Am. v. Peralta Cmty. Coll. Dist.*, No. 12-05943 JSC, 2013 WL 622944, at *7 (N.D. Cal. Feb. 15, 2013) (recognizing that motions to strike are disfavored and usually denied "unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties").

The SEC compounds its fundamental error in its attack on WIS's fair notice affirmative defense. The SEC argues that due process does not entitle WIS to "notice of an agency's 'interpretation' of a *statute*." Mem. at 5 (emphasis added). Again, Reg BI is a *rule*, not a statute. This distinction is material. As the SEC itself acknowledged in *Ripple*, a "higher fair notice standard is applicable when an agency seeks to enforce its own rules or regulations—'ascertainable certainty.'" *See* WIS's Request for Judicial Notice ("RJN"), Ex. A (SEC's Mem. of Law in Support of its Mot. to Strike in *Ripple*) at 17. Under this elevated standard, as the SEC has admitted, "regulated parties are entitled to know with 'ascertainable certainty' an agency's interpretation of its regulation." *Id*. In all events, the law is clear that regulated entities like WIS are entitled to challenge a regulator's application and interpretation of a rule on fair notice grounds. *See Phelps Dodge Corp. v. Fed. Mine Safety & Health Rev. Comm'n*, 681 F.2d 1189, 1192 (9th Cir. 1982) ("[T]he application of a regulation in a particular situation *may be challenged* on the ground that it does not give fair warning that the allegedly violative conduct was prohibited. In all events, we are required to make a careful inquiry to determine the reasonableness of the administrative interpretation and application of the regulation." (citation omitted) (emphasis added)).

The SEC also ignores the deference that must be afforded to factual allegations at the pleadings stage of litigation. The SEC repeatedly challenges WIS's fair notice defense as "factually deficient." Mem. at 5. But this is not the time for the Court to

decide factual disputes in the SEC's favor—even if there were some basis to question WIS's allegations as a matter of pleading (which there is not).  In truth, the factual disputes highlighted in the SEC's Motion only serve to underscore that the SEC is not entitled to the relief it seeks.  *GB Escrow, Inc.*, 2011 WL 4550831, at *2 (recognizing that to grant a motion to strike an affirmative defense "the court must be convinced that there are no questions of fact").

The SEC also argues that WIS should be barred at this stage from asserting a fair notice defense because the SEC adopted Reg BI more than a year before it became effective and issued a 770-page adopting release.  Mem. at 6.  Again, the SEC's argument fundamentally misses the point.  WIS has alleged that the SEC's Complaint accuses WIS of violating standards that the SEC did not articulate anywhere in Reg BI or the adopting release.  Answer ¶ 1.  Just because the SEC provides notice of a rule and related guidance does not mean that the SEC is free to apply the rule however it sees fit and without the possibility of being challenged.

The SEC offers little in opposition to WIS's selective enforcement defense.  It contends that the defense is barred because the "regulation is simply too new."  Mem. at 11.  But that is not enough to strike the affirmative defense.  This is the first action the SEC has ever brought against any broker-dealer for allegedly violating Reg BI.  The SEC's basis for singling out WIS from broker-dealers having Reg BI policy deficiencies, or from the approximately 145 other broker-dealers that sold the corporate bonds at issue, is certainly open to question, especially as many of the transactions at issue occurred during a period when the SEC publicly stated it was focused on whether firms have made a good-faith effort to implement Reg BI policies and procedures.

Finally, the SEC argues that it will be unfairly prejudiced if WIS pursues its fair notice defense and seeks discovery to support its arguments.  Mem. at 5-9.  This is not an adequate basis upon which to bar WIS from pursuing its affirmative defenses.  Having to provide discovery, as any other litigant must do, is not a

sufficient reason to prevent WIS from presenting certain defenses at the pleadings stage. *See Ripple*, 2022 WL 748150, at *6 ("[A] sufficiently pleaded defense 'should *always* be allowed if timely filed even if it will prejudice the [SEC] by expanding the scope of the litigation.'" (citation omitted) (emphasis added)).  Moreover, discovery regarding Reg BI practices at other industry firms will occur regardless of the outcome of this Motion, as such evidence is highly relevant to whether WIS acted reasonably.  The SEC should not be permitted, at this early stage of the litigation, to close the door on discovery that it may find bothersome, or that may call into question the validity of the SEC's claims filed against WIS.

## BACKGROUND

The SEC adopted Reg BI on June 5, 2019, after nearly a decade of intense public debate regarding the appropriate standard of conduct to govern the relationship between broker-dealers and their customers.  Answer ¶ 4.  Reg BI generally requires broker-dealers to act in the "best interest" of retail customers when recommending a securities transaction, without placing the interest of the firm ahead of the interest of the customer.  *Id*.  The Rule does not define the term "best interest."

The SEC issued a 770-page adopting release regarding Reg BI.  *Id*. ¶ 5.  The SEC chose June 30, 2020 as the compliance date for Reg BI, more than a year after the final Rule was adopted, in order to provide an "opportunity for broker-dealers to comply with [Reg BI], including by creating or updating the necessary disclosures and developing, updating or establishing their policies and procedures and systems, as appropriate, to achieve compliance with [Reg BI]."  *Id*. ¶ 6.

As the compliance date for Reg BI approached, WIS undertook reasonable, responsible, and good-faith efforts to comply with the Rule.  *Id*. ¶ 7.  For example, WIS: (1) updated its policies and procedures to implement Reg BI; (2) added a new policy specifically directed to Reg BI compliance; (3) amended client forms to support compliance with Reg BI; (4) published new disclosures related to Reg BI; (5) provided mandatory training to representatives and supervisors on Reg BI; (6)

discussed Reg BI compliance with supervisors during monthly meetings; and (7) maintained an internal resource webpage for all representatives regarding Reg BI that included procedures, forms, and FAQs. *Id*.

Mindful of the scope and complexity of Reg BI's requirements, the SEC stated that it would initially examine firms to see if they had made a "good-faith effort" to comply with the new regulation. *Id*. ¶ 14. For example, on April 2, 2020, former SEC Chairperson Jay Clayton stated that "[d]uring the initial period following the compliance date, SEC examiners will be focusing on whether firms have made a good faith effort to implement policies and procedures necessary to comply with Reg BI, while also providing an opportunity to work with firms on compliance and other questions." *Id*. The following week, another SEC official reiterated then-Chairperson Clayton's comments, acknowledging that implementing Reg BI would be an "iterative process." *Id*.

In examining firms for compliance with Reg BI, the SEC identified deficiencies with some firms' policies. The SEC publicly reported on its examination findings in its 2021 Examination Priorities report. *See* RJN, Ex. E (SEC 2021 Examination Priorities) at 4 (Mar. 3, 2021), available at https://www.sec.gov/files/2021-exam-priorities.pdf. In its report, the SEC noted potential concerns with Reg BI written supervisory procedures at other firms. *Id*. Despite identifying these issues at other firms, the SEC only elected to sue WIS. Answer ¶¶ 29, 30.

At the same time the SEC was examining broker-dealers for compliance with Reg BI, the Financial Industry Regulatory Authority ("FINRA") was doing the same thing. *Id*. ¶ 17. FINRA is a self-regulatory organization that is primarily responsible for regulating and examining broker-dealers. *Id*. ¶ 15. FINRA operates under the supervision of the SEC. *Id*.

FINRA conducted an examination of WIS related to compliance with Reg BI. *Id*. ¶¶ 18–22. FINRA completed its examination of WIS in February 2021 and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

produced a detailed fifteen-page report reflecting its findings. *Id*. ¶ 19. FINRA's report identified two deficiencies related to Reg BI. *Id*. First, FINRA stated that WIS's policies and procedures did not detail the steps and reviews to be undertaken by supervisors to ensure compliance with Reg BI, including the frequency and documentation of reviews. *Id*. ¶ 20. Second, FINRA stated that three WIS representatives inappropriately used the word "advisor" and/or "adviser" on business cards. *Id*. WIS promptly amended its policies and provided copies to FINRA. *Id*. ¶ 21.

In June 2022—just two weeks shy of the two-year anniversary of the Reg BI compliance date—the SEC filed the Complaint in this action. This is the SEC's first action to enforce Reg BI. *Id*. ¶ 30. The SEC alleges that WIS and five of its registered representatives violated Reg BI "in connection with their recommendations to retail customers to purchase an unrated debt security known as an L Bond." Compl. ¶ 6. In support of its claims, the SEC alleges that WIS's Reg BI policies and procedures are deficient in several respects. *See id*. ¶¶ 138–148.

The Complaint, however, accuses WIS of violating alleged Reg BI standards that the SEC has never articulated. Answer ¶¶ 31, 36–38. The standards do not appear in: (1) the Rule itself; (2) the 770-page Reg BI Adopting Release (despite its length); or (3) Reg BI guidance issued by the SEC. *Id*. For example, the SEC repeatedly criticizes WIS for not providing its internal "due diligence report" regarding L Bonds to its registered representatives and supervisors. *See* Compl. ¶¶ 56, 73, 145(b), 148(b). But there is nothing in Reg BI or related SEC guidance that requires firms to do this. Answer ¶ 31.

Similarly, Reg BI does not specifically require firms to: (1) provide supplemental training to representatives on new bond issuances when there are significant changes in an issuer's business (*see* Compl. ¶¶ 58, 72, 145(a)); (2) establish criteria or thresholds for customers to invest in securities (*see* Compl. ¶ 57);

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

WESTERN'S OPP. TO MOT. TO STRIKE
2:22-CV-04119-ODW

or (3) verify financial information provided by customers related to securities purchases (*see* Compl. ¶ 106).  Answer ¶ 31.

The SEC also faults WIS for failing to document why recommendations were believed to be in a customer's best interests.  *See* Compl. ¶¶ 97, 135.   But SEC guidance explicitly states that firms are not required to document the basis for their recommendations or their analysis of reasonably available alternatives.  Answer ¶ 36.

The SEC also alleges that WIS's compliance department did not examine whether the purchases at issue were in customers' best interest.  Compl. ¶ 64.  But SEC guidance plainly states that a transaction-by-transaction compliance review of Reg BI recommendations is not required.  Answer ¶ 64.

The result of FINRA's examination of WIS is powerful evidence that WIS did not have fair notice of what the SEC now contends Reg BI prohibits or requires.  FINRA, which is overseen by the SEC, identified only two minor deficiencies in its exam related to Reg BI, both of which were promptly addressed.  *Id.* ¶¶ 20-21.  FINRA did not identify anything like the myriad of Reg BI deficiencies alleged in the SEC's Complaint.  *Id.* ¶¶ 21, 34.  The fact that FINRA did not identify the deficiencies alleged in the SEC's Complaint demonstrates that WIS could not have known, with ascertainable certainty, that its policies were deficient in the manner alleged by the SEC.

WIS answered the SEC's Complaint and asserted eight affirmative defenses.  *Id.* ¶¶ 62–64.  The SEC now moves to strike five of those affirmative defenses: (1) lack of fair notice; (2) void for vagueness; (3) selective enforcement; (4) failure to state a claim; and (5) reservation of rights.

## **LEGAL STANDARD**

An affirmative defense must give the plaintiff fair notice of the defense. *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979).  Under Federal Rule of Civil Procedure 12(f), a court may strike an affirmative defense if it is insufficient or is "redundant, immaterial, impertinent, or scandalous."  Fed. R. Civ. P. 12(f).  "To

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

WESTERN'S OPP. TO MOT. TO STRIKE
2:22-CV-04119-ODW

determine that a defense is insufficient as a matter of law, the court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed." *GB Escrow, Inc.*, 2011 WL 4550831, at *2 (citation omitted).

"When ruling on a motion to strike, the Court must view the challenged pleadings in the light most favorable to the pleader." *Id*. at *2. The Court must take all facts alleged as true and draw all inferences in favor of the non-moving party. *See, e.g., CFPB v. Noh*, No. 821CV00488JWHADSX, 2022 WL 3574284, at *1 (C.D. Cal. July 21, 2022). "Due to the fact that motions to strike a defense are disfavored, they 'will not be granted if the insufficiency of the defense is not clearly apparent.'" *GB Escrow, Inc.*, 2011 WL 4550831, at *2 (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure: Civil* § 1381 (3d ed.)). "If there is any doubt as to whether the allegations might be an issue in the action, courts will deny the motion." *In re 2TheMart.com, Inc., Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).

"Because of the disfavored status of motions to strike affirmative defenses, courts often require a showing of prejudice by the moving party before granting the requested relief." *Noh*, 2022 WL 3574284, at *1 (citation omitted); *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) ("Some courts also refuse to grant Rule 12(f) motions unless prejudice would result to the moving party from denial of the motion."). Motions to strike "will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties." *First Nat. Ins. Co. of Am.*, 2013 WL 622944, at *7.

The SEC acknowledges that "[c]ourts in this District are split on . . . whether to apply the *Twombly* and *Iqbal* pleading requirements to affirmative defenses, but at a minimum[,] fair notice is required." Mem. 3. The plausibility standard of *Twombly* and *Iqbal* should not apply to WIS's affirmative defenses. "[G]ood reasons exist to

use a distinct standard for pleading affirmative defenses," as opposed to the plausibility standard governing complaints. *See Wyshak*, 607 F.2d at 826. Regardless, and as explained below, WIS's affirmative defenses readily satisfy either standard.

## ARGUMENT

## I.      The SEC Cannot Meet the Demanding Motion to Strike Standard.

After filing a 38-page, 158-paragraph Complaint, and drawing equally extensive answers from the Defendants, the SEC now seems intent on ignoring the specificity of its own factual allegations detailing what it contends Reg BI requires. In doing so, the SEC seeks to avoid that it has alleged Reg BI violations for which no notice was provided or, worse yet, are explicitly contradicted by SEC guidance.

### A.      The SEC Is Not Entitled to a Presumption Against Affirmative Defenses.

The SEC argues for a presumption in favor of striking affirmative defenses, contending that: "[c]ourts routinely grant SEC motions to strike insufficient affirmative defenses at the pleadings stage because 'courts have expressed reluctan[ce] to permit affirmative defenses to go forward against a government agency like the SEC, where the agency is seeking to enforce a congressional mandate in the public interest.'" Mem. at 3 (quoting *SEC v. Am. Growth Funding II, LLC*, No. 16CV00828 (KMW) (DF), 2016 WL 8314623, at *3 (S.D.N.Y. Dec. 30, 2016), *report and recommendation adopted*, No. 16 CV 0828 (KMW), 2017 WL 728701 (S.D.N.Y. Feb. 22, 2017). The SEC is entitled to no such presumption.

First, the cases relied upon by the SEC all involve the agency "seeking to enforce a *congressional mandate* in the public interest." Mem. at 3 (emphasis added) (quoting *Am. Growth Funding II*, 2016 WL 8314623, at *3). As that limiting language suggests, those cases all involved the SEC enforcing congressionally enacted securities laws. *See Am. Growth Funding II*, 2016 WL 8314623, at *1

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

WESTERN'S OPP. TO MOT. TO STRIKE
2:22-CV-04119-ODW

(Securities Act of 1933 and the Securities Exchange Act of 1934); *SEC v. KPMG LLP*, No. 03 CIV. 671 (DLC), 2003 WL 21976733, at *1 (S.D.N.Y. Aug. 20, 2003) (same); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 517 F. Supp. 3d 994, 997 (N.D. Cal. 2021) (Securities Exchange Act of 1934).  Here, the SEC is not enforcing any such "congressional mandate"—*i.e.*, a statute—let alone one that has been established for nearly a century.  Instead it is enforcing, and for the first time, a brand-new rule of the agency's own creation.

Second, *American Growth Funding* and the other cases upon which the SEC relies in support of such a presumption did not involve a fair notice challenge. Instead, they all involve attempts to assert the equitable defense of unclean hands against the government.  *See* Mem. at 3 (collecting cases).  As one of the SEC's cited cases explains, that particular defense—when it is asserted against the government—is subject to a different standard and requires a party to show that "the agency's misconduct [was] egregious and the resulting prejudice to the defendant r[o]se to a constitutional level."  *KPMG*, 2003 WL 21976733, at *3 (citation omitted).  Here, of course, WIS did not assert an unclean hands defense (or any other equitable defense), and this case law is inapposite.

## B.    WIS's Fair Notice Defense is Adequately Pleaded and Legally Supported.

### 1.    WIS Has a Due Process Right to Fair Notice.

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required.  This requirement of clarity in regulation is essential to the protections provided by the Due Process Clause of the Fifth Amendment."  *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).  In a fair notice challenge, a court considers whether a law or regulation "fails to provide a person of ordinary intelligence fair notice of what is prohibited."  *Id*. at 254; *see also United States v. Approx. 64,695 Pounds of Shark*

*Fins*, 520 F.3d 976, 980 (9th Cir. 2008) ("In the absence of notice—for example, where the regulation is not sufficiently clear to warn a party about what is expected of it—an agency may not deprive a party of property by imposing civil or criminal liability" (citation omitted)).

WIS is entitled to challenge the SEC's application of Reg BI in this case. *See Phelps Dodge*, 681 F.2d at 1192 ("[T]he application of a regulation in a particular situation may be challenged on the ground that it does not give fair warning that the allegedly violative conduct was prohibited." (citation omitted)).  These fair notice standards apply with significantly greater force to a regulated entity, such as WIS, which is entitled to know with "ascertainable certainty" what an agency rule like Reg BI prohibits or requires.  *See Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156 & n.15 (2012) (citing with approval *Dravo Corp. v. OSHA*, 613 F.2d 1227, 1232–1233 (3d Cir. 1980) (rejecting agency's expansive interpretation where agency did not state with "ascertainable certainty" what is meant by the standards it had promulgated)).

### 2.     Reg BI Is a Rule, Not a Statute.

The SEC contends that due process "does not entitle" WIS "to notice of an agency's 'interpretation' of a *statute*."  Mem. at 5 (emphasis added).  To state the SEC's argument is to rebut it.  Here, the SEC is not interpreting a *statute*; it is interpreting a brand-new *rule*, Reg BI, and therefore WIS is entitled to a significantly higher degree of notice: "ascertainable certainty" of what the Rule requires.

This distinction is not lost on the SEC.  In April of 2021, the SEC filed a similar motion to strike an affirmative defense of fair notice in the *Ripple* case.  *See* RJN, Ex. A (SEC's Mem. of Law in Support of its Mot. to Strike in *Ripple*); RJN, Ex. B (SEC's Mot. to Strike in *Ripple*).  *Ripple* involves an alleged violation of a statute—the Securities Act of 1933.  RJN, Ex. C (Amended Complaint in *Ripple*) at ¶ 9.  The case before this Court, of course, involves a rule—Reg BI.  In *Ripple*, the SEC freely

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

WESTERN'S OPP. TO MOT. TO STRIKE
2:22-CV-04119-ODW

acknowledged there is a "higher fair notice standard applicable when an agency seeks to enforce its own rules or regulations—'ascertainable certainty.'" RJN, Ex. A (SEC's Mem. of Law in Support of its Mot. to Strike in *Ripple*) at 17. The SEC recognized that "regulated parties are entitled to know with 'ascertainable certainty' an agency's interpretation of its regulation." *Id*. But while the SEC acknowledged this important distinction in *Ripple*, it argues for a different standard here.

In this case the SEC also mistakenly cites *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 251 (3d Cir. 2015), for a proposition that directly contradicts its reliance on the same case in *Ripple*. When discussing *Wyndam* in *Ripple,* the SEC recognized that a defendant is entitled to a much higher standard of fair notice regarding a rule, as opposed to a statute. *See* RJN, Ex. A (SEC's Mem. of Law in Support of its Mot. to Strike in *Ripple*) at 17 ("Specifically, in addressing an agency interpretation of its own rule . . . regulated parties are entitled to know with 'ascertainable certainty' an agency's interpretation of its regulation" (citing *Wyndham*)). Yet here, where a rule is involved, the SEC offers the same case for the supposed proposition that WIS was entitled to no notice at all. Mem. at 5 ("Due Process does not entitle [Defendants] to notice" (citing *Wyndham*)); *id.* at 8 ("'fair notice' does not entitle Western to notice" (citing *Wyndham*)). But the SEC cannot have it both ways, and it cannot change its interpretation of *Wyndam* to suit its argument in this matter. *See SmithKline Beecham Corp.*, 567 U.S. at 155 (agency may not take "convenient litigating position" in the interpretation of its own regulations (citation omitted)). *Wyndham*, as the SEC has already admitted, confirms WIS's position here "that private parties are entitled to know with 'ascertainable certainty' an agency's interpretation of its regulation." 799 F.3d at 251.

### 3.    WIS Pleaded Sufficient Facts to Establish a Fair Notice Defense.

Having misapprehended applicable law on fair notice, the SEC compounds its error by ignoring the deference that must be paid to WIS's well-pleaded factual

allegations. In ruling on a motion to strike an affirmative defense, courts deem the non-moving party's well-pleaded facts to be admitted, draw all reasonable inferences in the pleader's favor, and resolve all doubts in favor of denying the motion to strike. *See In re 2TheMart.com*, 114 F. Supp. at 965-66 (denying motion to strike on basis that reviewing court "must view the pleadings in a light most favorable to the pleading party"). Yet in its Motion, the SEC wades into factual arguments that it contends disprove WIS's fair notice defense, implicitly asking the Court to decide such matters in the SEC's favor at the opening stages of this action. But now is not the time to decide fact disputes, and the well-pleaded factual allegations in WIS's Answer are more than sufficient to support its fair notice defense. *See, GB Escrow*, 2011 WL 4550831, at *2.

### a. This Is the First Reg BI Enforcement Case, and That Matters.

The SEC puts little stock in WIS's allegation that "this is the first SEC action to enforce Reg BI"—contending that "this cannot be what fair notice requires." Mem. at 6. But once again, the SEC has previously taken a contrary position. In *Ripple*, the SEC (in attempting to distinguish a leading Second Circuit case) conceded that a lack of enforcement history gives rise to a stronger fair notice defense. RJN, Ex. D (SEC's Reply ISO Mot. to Strike in *Ripple*) at 13 (citing *Upton v. SEC*, 75 F.3d 92 (2d Cir. 1996)). As the SEC explained, "*Upton* involved the SEC's interpretation of a *rule*, violations of which the SEC had *only charged once* (and settled) before suing. . . ." *Id.* at 10 (contrasting that limited enforcement history with the statute in *Ripple*, which the SEC had "utilized for more than 75 years"). The SEC's own distinction applies with even greater force here. The simple point is that there is no regulatory enforcement history that indicated in any manner, let alone with ascertainable certainty, the SEC would interpret Reg BI in the manner that it did in the Complaint.

**b.      A 770 Page Adopting Release Is Not *Per Se* Fair Notice.**

The SEC contends that WIS must have had fair notice of Reg BI because the SEC adopted Reg BI before the conduct at issue and "the SEC provided guidance regarding the requirements of Reg BI, including a 770-page adopting release." Mem. at 6 (citation omitted). Again, the SEC's argument misapplies the standard that governs its Motion.

WIS repeatedly alleges in its Answer that neither Reg BI nor the 770-page adopting release requires broker-dealers to engage in the conduct that the SEC claims is required here. *See*, *e.g.*, Answer ¶ 31 (alleging that Reg BI does not require firms to provide copies of due diligence reports to representatives and supervisors). At this stage these facts must be deemed admitted—not contested—and the Court need not parse the adopting release to decide this Motion. Taken as true, the fact that the SEC drafted a 770-page adopting release that did not, *anywhere*, include the requirements alleged in the Complaint is powerful evidence that WIS could not have known, with ascertainable certainty, that such conduct was required.

Moreover, providing notice of a rule and issuing an adopting release are insufficient to bar WIS from challenging the SEC's application of the Rule to WIS in this case. WIS has a right to challenge that application. *See Phelps Dodge*, 681 F.2d at 1192. To hold otherwise would provide the SEC with the unchecked ability to apply its regulations in this litigation however it sees fit.

**c.      The FINRA Exam Further Demonstrates the Lack of Fair Notice.**

FINRA conducted an examination of WIS related to compliance with Reg BI. Answer ¶¶ 15–22. By February 2021, FINRA had completed its examination and provided a detailed fifteen-page report on its findings. *Id*. ¶ 19. FINRA's report identified two items specific to Reg BI that needed correction. *Id.* WIS promptly

addressed both these items and notified FINRA. *Id*. ¶ 21. The deficiencies in the examination report are nothing like the myriad of alleged Reg BI violations that appear in the Complaint. *Id*. ¶ 34.

The SEC argues that it is not "bound by FINRA's examination findings" and seeks to rebrand these factual allegations as an estoppel defense. Mem. at 8. However, the relevance of the exam to this action is not so difficult to understand. WIS is not arguing that the SEC is "bound by" FINRA's examination report, nor is it suggesting that the SEC is "estopped." Rather, FINRA's action—or, more pointedly, inaction—further demonstrates the unfairness and lack of notice evident in the Complaint. FINRA—which regulates and examines broker-dealers under the SEC's supervision and is charged with enforcing Reg BI—assessed WIS's Reg BI policies and procedures and did not identify the deficiencies that are now the subject of the Complaint. This is powerful evidence that WIS—a regulated entity—did not have fair notice of what Reg BI requires. Answer ¶ 34. How was WIS to know— with ascertainable certainty—that its policies and procedures were supposedly deficient when FINRA, after examining those same policies, did not identify the alleged deficiencies that the SEC has asserted here?

### d.     The SEC Is Bound by the Allegations of Its Complaint.

The SEC's remaining challenges to the factual bases of WIS's affirmative defenses are largely repetitive and similarly beyond the scope of a motion to strike. Mem. at 7–9. The SEC not only alleged a violation of Reg BI, but it also further set forth in painstaking detail the conduct it contends violated the Rule. *See* Compl. ¶¶ 53-89, 138-148. Unfortunately for the SEC, the Answer in turn identifies numerous instances in which the SEC's interpretation of Reg BI reflected in the Complaint is expressly or implicitly contradicted by its public statements, *see* Answer ¶¶ 14, 35, 40, and other instances where there has been no notice that

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

WESTERN'S OPP. TO MOT. TO STRIKE
2:22-CV-04119-ODW

identified acts were required under the Rule, *see* Answer ¶¶ 1, 36–38.  These factual allegations must be accepted as true.

In the face of the Answer, the SEC retreats to the language of the Rule and contends that "[f]undamentally, Western disagrees that certain evidence supports the SEC's allegation that Defendants' conduct was not reasonable."  Mem. at 8.  While that is true, the argument again misses the mark.  As a matter of due process, WIS is entitled to fair notice.  And that means that *before* the filing of the first-ever Reg BI enforcement action, WIS should have been able to determine with ascertainable certainty what Reg BI requires or prohibits.

Thus, the fair notice defense is not, as the SEC contends, simply "a dispute over the SEC's *prima facie* case."  Mem. at 8.  Yet again, the SEC is asking the Court to ignore WIS's well-pleaded allegations in the Answer and accept the allegations in the SEC's Complaint at face value.  *Compare* Mem. at 7 (offering the bare assertion that WIS's allegations are "simply not true" and repeatedly referring back to what the SEC "accuses" in the Complaint) *with GB Escrow*, 2011 WL 4550831, at *2 ("When ruling on a motion to strike, the Court must view the challenged pleadings in the light most favorable to [nonmoving party]." (citation omitted)).  This argument flips the proper standard on its head.

The SEC also misconstrues the standard when inviting the Court to address—at this threshold stage—core issues about "what the regulation requires" (Mem. at 7); the propriety of WIS's written policies and procedures (*id.*); WIS's allegations that "certain evidence" fails to support the SEC's reasonableness allegations (*id.* at 8); and whether WIS has offered a "plausible explanation for why" the FINRA examination report precludes the SEC's claims (*id.*).  These fact-laden questions address the ultimate merits of WIS's defense—not pleading sufficiency—and should not be addressed and resolved on a motion to strike.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

WESTERN'S OPP. TO MOT. TO STRIKE
2:22-CV-04119-ODW

### C.   WIS's Void-for-Vagueness Defense Is Adequately Pleaded.

The SEC objects to WIS citing a New York state decision in support of its void for vagueness defense, but the fact that the case was illustrative—but not binding authority—hardly means that the associated affirmative defense should be struck. Mem. at 9.  In pleading affirmative defenses parties need not cite authorities in support, so whether those authorities are controlling or persuasive is irrelevant to the question of whether the defense was sufficiently pleaded.  *See* Fed. R. Civ. P. 8(c). In fact, that New York decision was recently reversed.  *See Indep. Ins. Agents & Brokers of N.Y., Inc. v N.Y. State Dep't of Fin. Servs.*, 2022 WL 11361424 (N.Y. Oct. 20, 2022).  But again, that reversal—of a non-controlling decision—has no bearing on whether WIS sufficiently pleaded this defense, and that notice question is the only issue before the Court.

In evaluating a void for vagueness defense, "[c]ourts will [] consider whether the regulator has taken inconsistent positions, internally and externally." *Gay Men's Health Crisis v. Sullivan*, 733 F. Supp. 619, 641 (S.D.N.Y. 1989) (finding vagueness on summary judgment where there was confusion within the enforcing agency "as to the proper interpretation of a regulation").  Here, there is just such inconsistency.  For example, the SEC criticizes WIS representatives for not documenting why recommendations to purchase L Bonds were in a customer's best interest or better than other reasonably available alternative investments.  Compl. ¶¶ 97, 135.  But SEC guidance expressly relieves firms of any obligation to document the basis for their recommendations or their analysis of reasonably available alternatives.  Answer ¶ 36. WIS should be afforded the opportunity to prove its defense.

The void for vagueness concerns are particularly acute here because Reg BI lacks a scienter requirement, which exacerbates the vagueness problem.  Adopting Release at 33,327 ("Scienter will not be required to establish a violation of Regulation Best Interest."); *cf. Gonzales v. Carhart*, 550 U.S. 124, 149 (2007) (explaining that

scienter requirements "alleviate vagueness concerns"); *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982) ("[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed."). WIS is entitled to prove that its void for vagueness defense applies here.

### D. WIS's Selective Enforcement Defense Is Adequately Pleaded and Legally Supported.

#### 1. A Selective Enforcement Defense Is Proper When the Government Impermissibly Singles Out a Defendant.

As the SEC recognizes, selective enforcement is a defense in a civil enforcement action. *See United States v. McGraw-Hill Co., Inc.*, No. CV 13-779-DOC-JCGX, 2014 WL 1647385, at *1 (C.D. Cal. Apr. 15, 2014) (citation omitted); *see also* Mem. at 10. "The requirements for a selective-prosecution claim draw on ordinary equal protection standards." *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (citation omitted). Selective enforcement generally requires a showing "(1) that others are generally not prosecuted for the same conduct; and (2) the decision to single out the defendant was based upon impermissible grounds such as race, religion, or the exercise of constitutional rights, or that there was no rational basis for the difference in treatment." *Id.* As the Supreme Court has explained, equal-protection rights may be asserted by a "class of one" when the party asserting the right "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (holding that a lack of rational basis for different treatment can be the basis for a successful equal protection claim) (citation omitted).

## 2.    The SEC's Factual Argument Ignores the Rule 12(f) Standard and WIS's Well-Pleaded Allegations.

Despite acknowledging the legal viability of this defense, the SEC makes the factual argument that WIS "cannot demonstrate that the SEC's Complaint constitutes selective enforcement." Mem. at 10. Once again, this sort of fact-heavy inquiry is beyond the scope of a motion to strike. *GB Escrow*, 2011 WL 4550831, at *2 ("To show that a defense is insufficient, the moving party must demonstrate that there are *no questions of fact . . . .*" (emphasis added)).

Regardless, the SEC's argument fails on its own terms. First, the SEC contends that "[t]his regulation is simply too new to plausibly draw the conclusion that others are generally not prosecuted for the same conduct." Mem. at 11 (citation omitted). But Reg BI has been in effect for more than two years, and WIS is the only broker-dealer that the SEC has sued in a federal court action alleging violation of the Rule. Answer ¶¶ 27, 30. WIS is entitled to defend itself on the grounds that this was improper.

The SEC also claims that WIS "pleads no facts from which a Court could plausibly conclude that the SEC singled it out." Mem. at 11. This simply ignores the allegations in WIS's Answer, which must be taken as true at this stage. As WIS has alleged, "approximately 145 broker-dealers" sold L Bonds totaling about $2.3 billion through September 2021. Answer ¶ 27. None of those other broker-dealers were sued. WIS also alleges that it was targeted during a time when the SEC was telling the industry that it was examining firms to determine if they had made a good faith effort to comply with the Rule. *Id.* ¶¶ 14, 21. For example, in April 2020, former SEC Chairperson Clayton announced that "[d]uring the initial period following the compliance date, SEC examiners will be focusing on whether firms have made a good faith effort to implement policies and procedures necessary to comply with Reg BI, while also providing an opportunity to work with firms on compliance and other questions." Answer ¶ 14. But despite the focus on examining

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19                    WESTERN'S OPP. TO MOT. TO STRIKE
                     2:22-CV-04119-ODW

firms for good faith compliance with Reg BI—and identifying deficiencies at some firms—the SEC sued WIS (and only WIS) for allegedly violating Reg BI. From these well-pleaded facts, the Court could infer, quite readily, that WIS may have been impermissibly singled out by the SEC.

### 3. There Is no Categorical Bar Precluding Inquiry Into the SEC's "Internal Processes."

The SEC protests that WIS is "placing at issue the SEC's internal processes," and that supposed goal "is disfavored and inappropriate." Mem. at 11. Once again, the SEC's cases do not support its argument. For instance, one case involved an affirmative defense of an "unlawful and improper investigation." *SEC v. Gold Standard Mining Corp.*, No. CV 12-5662 PA (CWX), 2012 WL 12904080, at *2 (C.D. Cal. Dec. 10, 2012). The court struck that defense, but reserved that, "[i]f the alleged unlawful conduct of the investigation rises to the level of a violation of constitutional rights, then Defendant can bring a separate action." *Id.* WIS's affirmative defense is based on just such a Constitutional violation. The SEC's remaining authorities do not even involve affirmative defenses or motions to strike and have no relevance here. *See, e.g.*, *EEOC v. Chic. Miniature Lamp Works*, 526 F. Supp. 974, 975 (N.D. Ill. 1981); *EEOC v. Evans Fruit Co.*, No. CV-10-3033-LRS, 2012 WL 442025, at *3 (E.D. Wash. Feb. 10, 2012).

### E. WIS's Affirmative Defense of Failure to State a Claim Is Proper.

The SEC moves to strike WIS's affirmative defense of failure to state a claim, arguing that it is an improper negative defense. The SEC's request should be denied.

First, this affirmative defense is permitted by Federal Rule of Civil Procedure 12(h)(2), which expressly provides that a "failure to state a claim upon which relief can be granted . . . may be raised in any pleading allowed or ordered under Rule 7(a)." An answer, of course, is a pleading. Fed. R. Civ. P. 7(a)(2). Given this clarity, courts have concluded "that failure to state a claim can be raised as an affirmative defense

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20                              WESTERN'S OPP. TO MOT. TO STRIKE
                                2:22-CV-04119-ODW

under a plain interpretation of the Federal Rules of Civil Procedure." *Saniefar v. Moore*, No. 117cv00823, 2018 WL 3020458, at *3 (E.D. Cal. June 18, 2018); *Park v. Kitt*, No. 119cv01551, 2021 WL 1210364, at *2 (E.D. Cal. Mar. 31, 2021) (acknowledging that the court had "on prior occasions struck the defense" of failure to state a claim, but "after further consideration of the issue" in light of Rule 12(h), concluding that striking the defense was unnecessary).

Second, WIS provided the SEC with fair notice of this defense, which is all that is required to defeat a motion to strike. *Baroness Small Estates, Inc. v. BJ's Rest., Inc.*, No. 8:11-cv-00468-JST-E, 2011 WL 3438873, at *6 (C.D. Cal. Aug. 5, 2011) (denying motion to strike this defense when party had "fair notice of" the defense of failure to state a claim). Indeed, the SEC does not contend that it lacked such notice, and it could not possibly do so. *See Vistan Corp. v. Fadei USA, Inc.*, No. C-10-4862 JCS, 2011 WL 1544796, at *7 (N.D. Cal. Apr. 25, 2011) (denying motion to strike because this and other defenses, "while boilerplate, are standard affirmative defenses, appropriate at the outset of the case before discovery has commenced" and movant had fair notice of defenses). Fair notice "is enough to clear the low bar set for defeating a motion to strike" for even "conclusory" affirmative defenses. *Meggitt (San Juan Capistrano), Inc. v. Nie*, No. SACV130239DOCDFMX, 2014 WL 12589109, at *2 (C.D. Cal. Jan. 28, 2014).

Third, striking this defense would offer only cosmetic relief because the SEC could not possibly show prejudice from the defense remaining in the case. Courts have refused to strike this defense for precisely that reason, noting that "even when technically appropriate and well-founded, Rule 12(f) motions often are not granted in the absence of a showing of prejudice to the moving party." *Hernandez v. Balakian*, No. CV-F-06-1383 OWW/DLB, 2007 WL 1649911, at *1 (E.D. Cal. June 1, 2007); *Saniefar*, 2018 WL 3020458, at *3 (same).

The case law cited by the SEC offers no compelling reason to strike the defense. Mem. at 12. One case did not involve a claim of failure to state a claim at

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

WESTERN'S OPP. TO MOT. TO STRIKE
2:22-CV-04119-ODW

all; instead, it involved the "affirmative defense of accommodation." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002). And other cases describe this defense as "immaterial," *TSX Toys, Inc. v. 665, Inc.*, No. EDCV1402400RGKDTBX, 2015 WL 12746211, at *8 (C.D. Cal. Sept. 23, 2015), or "superfluous," *Clean Safety, Inc. v. Ruby Trucking LLC*, No. 521CV00225JWHSPX, 2021 WL 5935478, at *3 (C.D. Cal. July 27, 2021). This simply underscores that, even crediting the SEC's argument, it cannot show that it would be prejudiced by this defense, and there is no good reason to strike it.

### F.   WIS's Affirmative Defense Reserving Rights Is Proper.

The SEC moves to strike WIS's reservation of rights to assert additional defenses. Mem. 12. Once again, the SEC—having failed to articulate any prejudice from WIS retaining this defense—is seeking purely superficial relief.

Noting that a "reservation of rights does not prejudice" a moving party "in any way," courts often deny motions to strike this defense. *Noh*, 2022 WL 3574284, at *3. A party may reserve rights to add additional affirmative defenses "if discovery results in the disclosure of additional facts." *Barkhordar v. Century Park Place Condo. Ass'n*, No. 216CV03071CASEX, 2016 WL 6102323, at *6 (C.D. Cal. Oct. 18, 2016) (denying motion to strike this defense). Because a reservation of rights does not prejudice an opposing party, courts have denied motions to strike it even when finding it technically deficient. *NICOR, Inc. v. SourceBlue, LLC, Infinilux Corp.*, No. 2:21-CV-05300-AB-PD, 2021 WL 6618620, at *2 (C.D. Cal. Dec. 16, 2021) (concluding that the defense was "legally meaningless," but "not prejudicial," and declining to strike it); *FDIC v. Reis*, No. SACV122212JSTANX, 2013 WL 12126777, at *5 (C.D. Cal. Sept. 5, 2013) (declining to strike reservation of rights, even if it were an improper affirmative defense).

The SEC contends that WIS must comply with Fed. R. Civ. P. 15 if it later seeks to add affirmative defenses, Mem. at 13, but this merely states a truism that "is

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

WESTERN'S OPP. TO MOT. TO STRIKE
2:22-CV-04119-ODW

not relevant to resolution of the motion to strike." *Balakian*, 2007 WL 1649911, at *11 n.4 (denying motion to strike reservation of rights defense based on Rule 15). In fact, a reservation of rights—like this one—is perfectly "consistent with Federal Rule of Civil Procedure 15." *Miles v. Kirkland's Stores, Inc.*, No. EDCV1801559CJCSHKX, 2018 WL 10879443, at *3 (C.D. Cal. Sept. 12, 2018). WIS will assert any new defenses in compliance with Rule 15.

### G.     The Possibility of Discovery Is Not an Adequate Basis to Strike WIS's Affirmative Defenses.

The SEC argues that it will be prejudiced by discovery relating to the affirmative defenses that WIS has asserted. Mem. at 3–4. This is not an adequate basis to prevent WIS from asserting its affirmative defenses. *See GEOMC Co., Ltd. v. Calmare Therapeutics*, 918 F.3d 92, 98 (2d Cir. 2019) ("A factually sufficient and legally valid defense should *always* be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of litigation. A defendant with such a defense is entitled to a full opportunity to assert it and have it adjudicated before a plaintiff may impose liability" (emphasis added)). Broad discovery is standard in civil cases, and the SEC should not be allowed to use the possibility of broad discovery as a tactical means to limit WIS's ability to defend itself.

First, WIS's fair notice and void for vagueness affirmative defenses present issues of Constitutional significance. "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required. This requirement of clarity in regulation is essential to the protections provided by the Due Process Clause of the Fifth Amendment." *Fox Television Stations, Inc.*, 567 U.S. at 253 (citations omitted). Accordingly, these are important defenses, and WIS should be permitted to pursue them. *Cf. J & J Sports Prods., Inc. v. Luhn*, Civ. No. 2:10–3229 JAM CKD, 2011 WL 5040709, at *1 (E.D. Cal. Oct. 24, 2011) (evaluating whether a pleading will cause parties to "engage in burdensome discovery around *frivolous* matters" (emphasis added)).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

WESTERN'S OPP. TO MOT. TO STRIKE
2:22-CV-04119-ODW

Second, the discovery that the SEC seeks to avoid is likely to be at issue regardless of WIS's affirmative defenses. By alleging that WIS failed to exercise "reasonable diligence, care and skill" under Reg BI when recommending GWG L Bonds to customers, Mem. at 7, the SEC put industry standards at issue. The SEC knows the standards employed by other firms selling L Bonds through its investigation of GWG. The SEC also knows what similarly situated financial services firms have done to comply with Reg BI. Presumably when the SEC alleged that WIS acted without "reasonable diligence, care and skill," the SEC had a factual basis for this allegation based on the knowledge of what steps the industry has taken. WIS is entitled to discovery to support its position that it acted reasonably and in line with industry standards, independent of its fair notice defense.

Third, none of the SEC's cases support its argument that it should be insulated from this discovery. Mem. at 4–5. Yet again, all involve an equitable affirmative defense of unclean hands, which courts have singled out for special treatment in the prejudice analysis. *See* Mem. at 3–5. As one of the SEC's cases explains, "[t]he defense of unclean hands is a prime example" of a potentially prejudicial defense because it can lead the parties to become involved "in a wide-ranging and intrusive" discovery dispute. *SEC v. Cuban*, 798 F. Supp. 2d 783, 794–95 (N.D. Tex. 2011). That is not the case here.

Finally, by dedicating more than 20 paragraphs of its Complaint to allegations about GWG and its operations, conduct, lending, business and solvency—presumably derived from the SEC's investigation of GWG—the SEC put these facts squarely at issue in this case, and the SEC should not be heard to complain that it will now be held to its proof. *See* Compl. ¶¶ 23-42.

## **CONCLUSION**

For the foregoing reasons, WIS respectfully requests that the Court deny the SEC's motion to strike. In the alternative, WIS respectfully requests that—if the

Court grants the SEC's motion to strike in whole or in part—the Court permit WIS to amend its Answer.

Dated: October 31, 2022                    MORGAN, LEWIS & BOCKIUS LLP


By: */s/ Joseph E. Floren*
      Joseph E. Floren
      One Market Street
      Spear Street Tower
      San Francisco, CA  94105-1596
      Telephone: (415) 442-1391
      joseph.floren@morganlewis.com

      G. Jeffrey Boujoukos (pro hac vice)
      1701 Market Street
      Philadelphia, PA  19103-2921
      Telephone: (215) 963-5000
      jeff.boujoukos@morganlewis.com

      Jason S. Pinney (pro hac vice)
      Andrew M. Buttaro (pro hac vice)
      One Federal Street
      Boston, MA  02110-1726
      Telephone: (617) 341-7700
      jason.pinney@morganlewis.com
      andrew.buttaro@morganlewis.com

*Attorneys for Defendant Western International Securities, Inc.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

WESTERN'S OPP. TO MOT. TO STRIKE
2:22-CV-04119-ODW

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of October, 2022, I electronically filed the above with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.


/s/ *Joseph E. Floren*
Joseph E. Floren

Attorneys for Defendant
WESTERN INTERNATIONAL
SECURITIES, INC.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

26

WESTERN'S OPP. TO MOT. TO STRIKE
2:22-CV-04119-ODW