1                UNITED STATES DISTRICT COURT
               CENTRAL DISTRICT OF CALIFORNIA
2                 WESTERN DIVISION

3

4 U.S. SECURITIES AND EXCHANGE )
   COMMISSION,                )
5                          )
            Plaintiff,        )
6                          )
          vs.               )     Case No. 2:22-CV-04119-WLH-AFM
7                          )
   WESTERN INTERNATIONAL       )
8    SECURITIES,             )     Los Angeles, California
                         )     July 11, 2023
9          Defendant.       )
   _____ _____ )
10

11

12                        HEARING
    BEFORE THE HONORABLE ALEXANDER F. MAC KINNON
13           UNITED STATES MAGISTRATE JUDGE

14

15 APPEARANCES:              See Next Page

16 COURT REPORTER:        Recorded, CourtSmart

17 COURTROOM DEPUTY:     Ilene Bernal

18 TRANSCRIBER:             Dorothy Babykin
                         Courthouse Services
19                          1218 Valebrook Place
                         Glendora, California  91740
20                          (626) 963-0566

21

22
    PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.
23    TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

24

25

1    APPEARANCES:

2

3    FOR PLAINTIFF U.S. SECURITIES AND EXCHANGE COMMISSION:

4    U.S. SECURITIES AND EXCHANGE COMMISSION
     ENFORCEMENT
     BY:  ARIELLA OMHOLT GUARDI
5         STAFF ATTORNEY
     175 WEST JACKSON BOULEVARD
6    SUITE 1450
     CHICAGO, ILLINOIS  60604

7

8    FOR DEFENDANT WESTERN INTERNATIONAL SECURITIES:

9    MORGAN LEWIS & BOCKIUS LLP
     BY:  JOSEPH E. FLOREN
          ATTORNEY AT LAW
10   SPEAR STREET TOWER
     ONE MARKET
11   SAN FRANCISCO, CALIFORNIA  94105

12   MORGAN LEWIS & BOCKIUS LLP
     BY:  G. JEFFREY BOUJOUKOS
13        ATTORNEY AT LAW
     1701 MARKET STREET
14   PHILADELPHIA, PENNSYLVANIA  19103

15

16

17

18

19

20

21

22

23

24

25

1

2                                    I N D E X

3    2:22-CV-04119-WLH-AFM                              JULY 11, 2023

4    PROCEEDINGS:  HEARING RE:  DEFENDANT WESTERN INTERNATIONAL
     SECURITIES, INC'S MOTION TO COMPEL FURTHER RESPONSES TO
5    REQUEST FOR PRODUCTION OF DOCUMENTS (ECF 74)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          LOS ANGELES, CALIFORNIA; JULY 11, 2023

2          THE CLERK:  CALLING ITEM NUMBER 3, CASE NUMBER

3     CV 22-04119-WLH-AFMx.

4          UNITED STATES SECURITIES AND EXCHANGE COMMISSION

5     VERSUS WESTERN INTERNATIONAL SECURITIES.

6          COUNSEL, PLEASE MAKE YOUR APPEARANCES FOR THE

7     RECORD.

8          MS. GUARDI:  GOOD MORNING, YOUR HONOR.

9          ARIELLA GUARDI FOR THE PLAINTIFF SEC.

10         THE COURT:  GOOD MORNING.

11         MR. BOUJOUKOS:  GOOD MORNING, YOUR HONOR.

12         G. JEFFREY BOUJOUKOS ON BEHALF OF WESTERN

13    INTERNATIONAL WITH MY COLLEAGUE JOE FLOREN.

14         THE COURT:  OKAY.  GOOD MORNING.

15         USUALLY WE PUT THE PLAINTIFF OVER THERE.  I THINK THEY --

16    IN MOST COURTROOMS THE PLAINTIFF GETS TO SIT CLOSEST TO THE

17    JURY, SO.

18         OKAY.  WE'RE HERE THIS MORNING FOR A HEARING REGARDING

19    THE DEFENDANT WESTERN INTERNATIONAL SECURITIES' MOTION TO

20    COMPEL FURTHER RESPONSES TO REQUEST FOR THE PRODUCTION OF

21    DOCUMENTS IN THIS CASE, WHICH IS AT ECF NUMBER 74.

22         I'VE LOOKED AT THE BRIEFING AND DECISIONS.  IT STRIKES ME

23    THAT MOST OF THE DECISIONS THAT WERE RELEVANT HERE ARE

24    DISCOVERY RULINGS FROM DISTRICT COURTS, EITHER DISTRICT JUDGES

25    OR MAGISTRATE JUDGES.  ALL OF WHICH ARE INSTRUCTIVE BUT MAY NOT

1    BE BINDING ON THIS ISSUE.

2          IT ALSO STRIKES ME THAT MOST OF THE COURTS LOOK AT THIS

3    USING THE BASIC FUNDAMENTAL PRINCIPLES OF RELEVANCE AND

4    PROPORTIONALITY ALONG WITH PRIVILEGE POTENTIALLY .

5          AND I THINK IF THERE'S A -- IF THERE'S A COMMON THREAD I

6    THINK IT IS THAT -- AND I'M NOT SAYING THIS IS ACROSS THE BOARD -- BUT

7    THAT THERE ARE COURTS THAT LOOK AT THIS AS TO COMMUNICATIONS

8    WITH BROKER DEALERS FROM THE SEC ARE RELEVANT TO THE ISSUE OF

9    FAIR NOTICE BECAUSE THEY TALK ABOUT WHAT THE MARKETPLACE

10   UNDERSTANDS.

11          BUT INTERNAL COMMUNICATIONS WITHIN THE SEC AND

12   OTHER  -- I DON'T KNOW IF ANYBODY TALKED ABOUT COMMUNICATIONS

13   WITH CONGRESS – BUT I THINK IN GENERAL WHERE PRODUCTION IS

14   REQUIRED IT'S WHEN THE SEC IS COMMUNICATING WITH THESE BROKER

15   DEALERS REGARDING THIS REGULATION OR WHATEVER REGULATION

16   WAS AT ISSUE IN THOSE CASES.

17          I THINK THEY DO THAT AS RELEVANT SOME OF THE COURTS.

18   AND SOME OF THE COURTS VIEW THAT I THINK AS THEY DON'T TALK

19   ABOUT PROPORTIONALITY.  AT LEAST THEY THINK IT'S APPROPRIATE

20   HERE.

21          AND I THINK THAT'S IN LINE WITH HOW I WOULD PROBABLY LOOK

22   AT THE QUESTION.

23          WHAT I DON'T REALLY UNDERSTAND BECAUSE I'M NOT SURE IT'S

24   DETAILED HERE IS IN THIS CASE DEALING WITH THIS REGULATION WHAT IS

25   THE EXTENT OF THE COMMUNICATIONS THAT THE SEC WOULD HAVE HAD

1    WITH OTHER BROKER DEALERS THAT WOULD BE RELEVANT HERE – OR

2    POTENTIALLY RELEVANT.

3         MS. GUARDI:  IS THAT ADDRESSED TO ME, YOUR HONOR?

4         THE COURT:  YES, YES.  I DON'T THINK THEY WOULD KNOW.

5         MS. GUARDI:  WELL, I THINK -- AND I'M SURE COUNSEL WILL

6    CORRECT ME IF I'M WRONG.  BUT I THINK IT FALLS INTO A COUPLE OF

7    DIFFERENT CATEGORIES AND THEREFORE A COUPLE OF DIFFERENT OF

8    THE CONTESTED REQUESTS.

9         WHEN YOU'RE TALKING ABOUT COMMUNICATIONS WITH THE

10   INDUSTRY, YOU KNOW, ONE THING THAT THEY'VE ASKED FOR IS ALL

11   COMMUNICATIONS WITH OTHER BROKER DEALERS REGARDING THE

12   INSTRUMENT THAT WAS AT ISSUE HERE, THE L BONDS.

13        AND ANOTHER THING THAT THEY'VE ASKED FOR IS, YOU KNOW,

14   AMONG OTHER DOCUMENTS THAT THEY'VE REQUESTED FROM EXAM

15   FILES, COMMUNICATIONS WITHIN THOSE EXAM FILES.

16        AND, THEN, A THIRD BUCKET OF INFORMATION THAT THEY'VE

17   REQUESTED IS QUOTE, UNQUOTE, GUIDANCE ISSUED BY THE SEC.

18        SO, I THINK THAT ON MY READ MOST OF THE CASES, IF NOT ALL

19   OF THE CASES, WHERE THE SEC OR ANOTHER PARTY WAS REQUIRED TO

20   PRODUCE DOCUMENTS THEY FALL INTO THAT THIRD CATEGORY AND

21   THAT THE SEC PROVIDING GUIDANCE THAT OTHER PEOPLE, THIRD

22   PARTIES IN THE INDUSTRY MIGHT RELY ON.  AND THAT THAT WAS I GUESS

23   RELATED OR RELEVANT TO FAIR NOTICE.

24        SO, ON THAT -- AND WE CAN TALK ABOUT THIS MORE, BUT OUR

25   POSITION IS THAT WE HAVE PRODUCED ALL OF THE DOCUMENTS

1  RESPONSIVE TO THOSE REQUESTS.  SO, IT JUST LEAVES --

2          THE COURT:  I THINK YOU'RE USING GUIDANCE ON A PRETTY

3  FORMAL SENSE IS WHAT YOU'RE TALKING ABOUT GUIDANCE.  WELL,

4  THERE COULD BE LOTS OF THINGS IN COMMUNICATIONS THAT YOU MIGHT

5  NOT CALL GUIDANCE BUT SOMEONE ELSE MIGHT THINK WELL, THAT'S

6  RELEVANT TO UNDERSTANDING WHETHER THERE'S A, YOU KNOW, CLEAR

7  UNDERSTANDING -- MEANING OF THIS REGULATION OR NOT.

8          AND WHAT -- THE RESPONSE FROM THE BROKER DEALERS

9  WOULD ALSO BE POTENTIALLY RELEVANT TO THAT.

10          RIGHT?  NOT JUST THE GUIDANCE YOU PROVIDE BUT HOW

11  PEOPLE RESPOND TO IT AND THE QUESTIONS THEY MIGHT HAVE HAD.

12          MS. GUARDI:  WELL, CERTAINLY.

13          AND THE QUESTION  -- SO, JUST TO BE CLEAR, THE QUESTIONS

14  THAT WERE ASKED -- AND THE INDUSTRY WAS PROVIDED WITH A SPECIFIC

15  EMAIL ADDRESS TO USE FOR SUCH QUESTIONS.

16          AND NOT ONLY THAT, BUT IT WAS THE PRACTICE OF THE

17  PEOPLE WHO MAINTAINED -- YOU KNOW, WHO WERE RESPONSIBLE FOR

18  PROVIDING GUIDANCE TO FORWARD INQUIRIES THAT WENT INTO OTHER

19  SOURCES TO THAT EMAIL BOX SUCH THAT THE EMAIL BOX WOULD BE A

20  REPOSITORY FOR PEOPLE SEEKING THAT KIND OF GUIDANCE.

21          AND THOSE DOCUMENTS HAVE BEEN SEARCHED AND WHERE

22  RESPONSIVE PRODUCED.  SO --

23          THE COURT:  I THINK WHAT THEY'RE TALKING ABOUT IS

24  SOMEBODY ELSE THAT WOULD BE SIMILARLY SITUATED TO WHERE THEY

25  WERE.  THE SEC IS IN THE PROCESS OF TALKING TO THEM ABOUT

1   WHETHER THEY'VE COMPLIED WITH THE REGULATION AND WHAT DID

2   THEY SAY AND WHAT DID THE SEC SAY BACK AND FORTH TO THEM.

3          I GATHER THAT'S WHAT ONE OF THE THINGS THEY'RE LOOKING

4   FOR, RIGHT?

5          MS. GUARDI:  I  -- I DO GATHER THAT AS WELL.

6          SO, A COUPLE OF THINGS ON THAT.

7          THE COURT:  WHY SHOULDN'T THEY GET THAT?

8          MS. GUARDI:  SO, THE FIRST THING IS TO YOUR POINT ABOUT

9   THE DEFINITION OF GUIDANCE.

10          THE COURT:  RIGHT.

11          MS. GUARDI:  RIGHT.  AND SO OUR POSITION WOULD BE -- AND I

12   THINK THERE'S A LOT OF CASES THAT WE CITED THAT SUPPORT THAT.

13          YOU KNOW, INDIVIDUALS LIKE LINE STAFF ATTORNEYS AND

14   ACCOUNTANTS AND EXAMINERS AT THE SEC CAN'T OFFER GUIDANCE AND

15   ALSO CAN'T BIND THE SEC AND DON'T SPEAK FOR THE SEC.

16          SO  -- AND CASES HAVE FOUND THAT THEREFORE, YOU KNOW,

17   THOSE THINGS AREN'T RELEVANT AND HAVE LIMITED PROBATIVE VALUE

18   TO FAIR NOTICE OR ANYTHING ELSE.  SO, THAT'S -- THAT'S ONE POINT ON

19   THAT.

20          BUT THEN A SECOND POINT I WANT TO MAKE ABOUT THAT IS

21   THAT WE'RE AT A DIFFERENT PLACE NOW THAN WE WERE WHEN THIS WAS

22   ORIGINALLY BRIEFED FOR YOUR HONOR.

23          AND AS WE PUT IN OUR SUPPLEMENTAL BRIEFING, THE SEC HAS

24   NOW AGREED TO PRODUCE THE FILES FROM THE GWG INVESTIGATION

25   WHICH MEANS THAT -- AND THESE WERE THE MOST SIMILAR -- WHAT I

1    THINK DEFENDANTS REFER TO AS THE MOST SIMILARLY SITUATED AT THE

2    BROKER DEALERS, RIGHT  -- THE BROKER DEALERS WHO WERE SELLING

3    THESE L BONDS, 62 OF WHICH WERE CONTACTED IN THAT COMM- -- IN

4    THAT INVESTIGATION AND COMMUNICATED WITH.

5            AND I THINK THERE – WE SAID THERE WERE ALMOST A

6    HUNDRED THOUSAND DOCUMENTS PRODUCED BY THOSE PARTIES AS

7    WELL AS HUNDREDS OF PAGES OF CORRESPONDENCE BACK AND FORTH

8    BETWEEN THOSE BROKERED -- THOSE 62 BROKER DEALERS AND THE SEC.

9    ALL OF THAT IS NOW GOING TO GO OUT.

10            SO, IN ADDITION TO  --

11            THE COURT:  OKAY.  SO, WHY SHOULD WE LIMIT IT TO

12    GWG-RELATED BROKER DEALERS?  WHY NOT  --

13            HOW MANY – HOW MANY MORE DO YOU HAVE?  HOW MANY –

14    HOW MUCH MORE COMPARABLE INFORMATION DO YOU HAVE BEYOND

15    THIS GWG SITUATION?

16            MS. GUARDI:  WELL, SO HERE WE'RE – I THINK WE NEED TO

17    BREAK IT DOWN INTO DIFFERENT REQUESTS, TOO.  BECAUSE THERE ARE

18    -- THE OTHER BROKER DEALERS WITH WHOM THE SEC MAY HAVE SPOKEN

19    ABOUT L BONDS  --

20            THE COURT:  UH-HMM.

21            MS. GUARD:   -- AND THEN THERE ARE 57 EXAMS THAT THEY

22    WANT THAT HAVE NOTHING -- YOU KNOW, MAY OR MAY NOT HAVE

23    ANYTHING TO DO WITH L BONDS.  IT'S JUST THE 57 FIRST EXAMS THAT

24    TOOK PLACE AFTER REG-BI.  SO, THAT'S DIVORCED FROM THE

25    L BOND ISSUE.

1          SO, TAKING THE FIRST ISSUE FIRST, THERE ARE OTHER PEOPLE

2     WITH WHOM THE SEC MAY HAVE SPOKE REGARDING L BONDS.

3          I THINK IT'S  -- I THINK IT'S A PROPORTIONALITY ISSUE.

4          SO, WHAT YOU'RE ASKING FOR THERE, L BONDS HAVE BEEN

5     ISSUED.  IT'S IN THE COMPLAINT SINCE 2012.  SO, NOW THAT THEY HAVE

6     THESE HUNDREDS OF – YOU KNOW, THESE THOUSANDS AND THOUSANDS

7     OF DOCUMENTS, IS IT PROPORTIONAL TO REQUEST --

8          THE COURT:  WHEN DID  -- WHEN DID THE REGULATION  --

9          MS. GUARDI:  -- THE SEC  --

10         THE COURT:   -- COME INTO EFFECT THAT WE'RE TALKING ABOUT

11    HERE?  ISN'T THAT WHAT WE'RE  -- WE'RE CONCERNED ABOUT WHETHER

12    THE REGULATION GAVE FAIR NOTICE.

13         MS. GUARDI:  WELL, WHAT THE REQUEST ASKS FOR IS L BONDS

14    --

15         THE COURT:  YEAH.  BUT MY QUESTION IS WHEN -- THE

16    REGULATION THAT'S AT ISSUE, WHEN DID THAT COME INTO EFFECT?

17         MS. GUARDI:  JUNE 2020.

18         THE COURT:  RIGHT.  SO, NOTHING BEFORE THAT IS GOING TO

19    TELL US WHAT PEOPLE KNEW OR THOUGHT ABOUT THAT REGULATION IN

20    TERMS OF FAIR NOTICE I WOULD THINK.

21         MR. BOUJOUKOS:  WELL, YOUR HONOR, IF I MAY BE HEARD FOR

22    ONE MOMENT.

23         THE REGULATION WAS PROMULGATED AND PUT INTO EFFECT IN

24    JUNE OF '19.  IT WENT INTO EFFECT -- IT HAD TO BE COMPLIED WITH IN

25    JUNE OF 2020.

1          SO, THERE'S A PERIOD OF TIME WHERE THE INDUSTRY IS

2    GETTING --

3          THE COURT:  OKAY.  BUT IT WOULDN'T GO BACK TO 2012.

4          MR. BOUJOUKIS:  CORRECT.

5          THE COURT:  RIGHT.  SO, WE'RE NOT TALKING  --

6          MR. BOUJOUKIS:  CORRECT, YOUR HONOR.

7          THE COURT:  -- ABOUT GOING THAT FAR BACK.  WE'D BE STUCK

8    MAYBE 2019.  I GUESS, 2020.

9          IF WE LIMIT IT TO THAT TIMEFRAME TO THE PRESENT, HOW

10   MANY PEOPLE ARE  -- HOW MANY COMMUNICATIONS, HOW MANY ENTITIES

11   ARE WE TALKING ABOUT THAT YOU'D BE – THAT THE SEC WAS

12   COMMUNICATING WITH?

13         MS. GUARDI:  REGARDING THE L BONDS SPECIFICALLY OR?

14         THE COURT:  NO.  REGARDING THIS REGULATION AND

15   ENFORCING IT.

16         MS. GUARDI:  WELL, IF – IF YOU'RE TALKING ABOUT

17   EXAMINATIONS, THERE'S  -- THERE WERE 57 EXAMINATIONS IN THE

18   UNIVERSE – THAT  -- AND WE'VE TALKED ABOUT THIS  -- IN THE UNIVERSE

19   THAT THEY'RE ASKING ABOUT, THE INITIAL REG-BI --

20         THE COURT:  OKAY.

21         MS. GUARDI:   -- EXAMINATIONS.

22         THE COURT:  AND  -- AND YOU'RE SAYING IT WOULD BE

23   DISPROPORTIONAL TO HAVE TO GO THROUGH THOSE EXAMINATIONS AND

24   PULL OUT THE COMMUNICATIONS BACK AND FORTH THAT WOULD -- THAT

25   THEY'RE ASKING FOR.

1        MS. GUARDI:  THE COMMUNICATIONS BACK AND FORTH, THE

2    DOCUMENTS BEING REQUESTED, AND IMPORTANTLY THE DEFICIENCY

3    LETTERS TO THOSE OTHER REGISTRANTS WHICH ARE CONSIDERED, YOU

4    KNOW, VERY SENSITIVE INFORMATION OF WESTERN'S COMPETITORS AND

5    NOT SOMETHING THAT'S TYPICALLY PRODUCED.

6        THE COURT:  SO, I MEAN, THAT -- THERE'S A LOT OF DISCUSSION

7    IN THE BRIEF.  THERE'S NOT A LOT OF EVIDENCE ABOUT THIS BURDEN.

8        I THINK THERE'S  -- I SAW  -- MAYBE I MISSED IT.  BUT I SAW A

9    DECLARATION FROM ONE PERSON SUPPORTING THE SEC'S POSITION.

10   AND IT TALKED ABOUT THEY RAN A SEARCH.  AND IT LOOKED LIKE ON ONE

11   ISSUE.

12       AND IT WASN'T THE TYPE OF EXTENSIVE DISCUSSION OF WHAT --

13   WHAT THIS BURDEN WOULD BE THAT FIT -- FEEDS INTO PROPORTIONALITY

14   HERE UNLESS I MISSED IT.  IF I DID, I'D LIKE YOU TO POINT ME TO WHERE I

15   SHOULD BE LOOKING THAT GIVES ME THEIR ACTUAL SPECIFICS -- HOW

16   MANY  -- HOW MANY DOCUMENTS, HOW MANY COMPANIES, HOW MANY

17   BROKER DEALERS ARE WE TALKING ABOUT.

18       IF IT'S 5, IT'S ONE THING.  IF IT'S 5,000, IT'S ANOTHER THING.

19       MS. GUARDI:  SO, IT -- THE NUMBER 57 IS IN THE BRIEFING.  I

20   DON'T THINK --

21       THE COURT:  I DON'T KNOW WHAT  --

22       MS. GUARDI:  I DON'T THINK YOU MISSED ANY  --

23       THE COURT:  -- THAT MEANS THOUGH.  57 --

24       MS. GUARDI:  I DON'T THINK YOU MISSED ANYTHING WITH

25   RESPECT TO SOMEBODY OUTLINING WHAT WOULD THAT MEAN IN TERMS

1    OF STAFF HOURS TO --

2              THE COURT:  RIGHT.

3              MS. GUARDI:  -- TO GO THROUGH THOSE THINGS.

4              THE COURT:  57 EXAMS, I'M NOT SURE WHAT  -- I'M NOT AN

5    EXPERT IN THIS FIELD OBVIOUSLY.

6              SO, I DON'T KNOW WHAT IT MEANS THAT THERE'S 57 EXAMS.

7    WHAT IS THAT -- IS THAT GOING TO BE A ROOM FULL OF DOCUMENTS?  IS

8    IT GOING TO BE TWO BOXES FULL?  IS IT GOING TO BE A -- YOU KNOW, IS IT

9    GOING TO TAKE SIX MONTHS FOR AN ATTORNEY TO GO THROUGH IT OR IS

10   IT GOING TO TAKE A WEEK?  THOSE ARE ALL THE KIND OF THINGS WE

11   NEED TO KNOW TO DETERMINE PROPORTIONALITY, I THINK.

12             MS. GUARDI:  SURE.  AND I --

13             THE COURT:  AND I DON'T HAVE THAT  --

14             MS. GUARDI:  -- APOLOGIZE FOR THE  --

15             THE COURT:  -- INFORMATION.

16             MS. GUARDI:  I APOLOGIZE FOR THE LACK OF SPECIFICITY.

17             BUT I WOULD BE REMISS IF I DIDN'T POINT OUT THAT, YOU

18   KNOW, WHEN IT COMES TO THE BURDEN ARGUMENTS, I THINK, YOU

19   KNOW, THERE ARE OTHER THINGS TO CONSIDER  --

20             THE COURT:  SURE.

21             MS. GUARDI:  -- THAT WE SET FORTH IN OUR  -- IN OUR

22   BRIEFING.

23             THE COURT:  THERE IS.  BUT PROPORTIONALITY -- BURDEN ISN'T

24   THE ONLY THING.  BUT IT'S ONE OF THE IMPORTANT THINGS WE LOOK AT.

25             SO, IF I DON'T KNOW WHAT THE BURDEN IS, WHAT IS YOUR

1    OTHER ARGUMENT ABOUT WHY THESE 57 EXAMS SHOULD BE OFF LIMITS?

2        MS. GUARDI:  THE OTHER ARGUMENTS THAT WE RAISED FOR

3    THAT PARTICULAR REQUEST WERE THE TANGENTIAL RELEVANCE OF THE

4    MATERIALS THAT MIGHT BE FOUND WITHIN THOSE EXAMINATION FILES AS

5    WELL AS THE EXPECTATIONS OF PRIVACY THAT REGISTRANTS HAVE

6    WHEN THEY ENGAGE IN SEC EXAMINATIONS.

7        AND THE RISK OF THE CHILLING EFFECT ON COOPERATION WITH

8    THE SEC AND THEIR EXAMINATION PROGRAM IF, YOU KNOW, ON

9    WHATEVER KIND OF SHOWING OTHER REGISTRANTS CAN COME INTO

10   COURT AND ASK  US TO OPEN UP OUR FILES IN THAT WAY.

11       THERE'S NOTHING THAT MAKES WESTERN SPECIAL IN THAT

12   REGARD.  LIKE WHY CAN'T ANY BROKER DEALER IN ANY CASE THAT WE

13   BRING ASK US TO OPEN OUR FILES FOR EVERY OTHER EXAMINATION, OR

14   FOR THAT MATTER ANY PUBLIC COMPANY ACCUSED OF ACCOUNTING

15   FRAUD, YOU KNOW, ASK ABOUT THE  --

16       THE COURT:  I MEAN, I GUESS  -- I THINK THE FAIR NOTICE ISSUE

17   IS WHAT I VIEW AS THE STRONGEST SORT OF ARGUMENT TO SUPPORT

18   THIS DISCOVERY.  AND AT SOME POINT THERE'S GOING TO BE A  -- YOU

19   KNOW, A DECISION OR DECISIONS THAT SAY EITHER ACCEPTING OR

20   REJECTING THIS FAIR NOTICE CLAIM.  AND THEN IT WON'T EXIST ANYMORE

21   ONCE IT'S DETERMINED YOU HAVE PEOPLE UNDERSTAND WHAT THIS

22   REGULATION MEANS, I GUESS.

23       BUT THE CASES DO SEEM TO SAY THAT, YOU KNOW,

24   MARKETPLACE OBJECTIVE UNDERSTANDING IS ONE OF THE IMPORTANT

25   FACTORS OF FAIR NOTICE.

1                AM I MISSING THAT OR IS THAT CORRECT?

2                MS. GUARDI:  WELL, I THINK THAT'S A -- THAT'S A FAIR SUMMARY

3        FOR WHERE WE ARE TODAY.

4                I MEAN, I'D LIKE TO BE HEARD A LITTLE BIT ON THIS FAIR NOTICE

5        POINT BECAUSE I HEAR YOU THAT IT'S GOING TO BE DECIDED DOWN THE

6        ROAD.  BUT AS YOU CAN SEE IN  --

7                THE COURT:  I'M NOT GOING TO DECIDE IT.  THAT'S NOT MY JOB.

8                MS. GUARDI:  THE  --

9                THE COURT:  I HAVE TO KIND OF TAKE IT FOR  -- YOU KNOW, IT'S

10       IN THE CASE RIGHT NOW.  AND I HAVE TO -- I HAVE TO ASSUME IT IS A –

11       YOU KNOW, A VALID DEFENSE.  AND THEY HAVE A RIGHT TO TAKE

12       DISCOVERY ON IT.

13               MS. GUARDI:  WELL, OKAY.  SO, I'LL SPARE YOU THEN LIKE MOST

14       OF WHAT I HAD PREPARED TO TALK ABOUT WITH  --

15               THE COURT:  BECAUSE IF YOU'RE ARGUING  --

16               MS. GUARDI:   -- FAIR NOTICE BUT  --

17               THE COURT:   -- THEIR FAIR NOTICE DEFENSE IS NO GOOD, IT'S

18       FRIVOLOUS WHATEVER, I'M PROBABLY NOT GOING TO BE ABLE TO MAKE

19       THAT JUDGMENT.  IT'S NOT REALLY MY CALL AS A  -- IN RESOLVING A

20       DISCOVERY DISPUTE.

21               MS. GUARDI:  AND  -- AND I DEFINITELY ACKNOWLEDGE THAT,

22       YOUR HONOR.

23               I THINK IT CAN GO INTO A PROPORTIONALITY ANALYSIS  -- YOU

24       KNOW, HOW STRONG OR FAR-FETCHED.

25               BUT -- BUT SETTING THAT ASIDE FOR A MOMENT, LIKE, EVEN --

1   EVEN IN RIPPLE WHICH I THINK WOULD BE THE HIGH WATER MARK OF,

2   YOU KNOW, DEFENSE ATTORNEYS GETTING THIS KIND OF LIKE

3   BURDENSOME DISCOVERY, I DON'T THINK THAT THEY GOT ALL OF THE

4   THINGS THAT WESTERN IS ASKING FOR HERE.

5         AND --

6         THE COURT:  WELL, I'VE ALREADY SAID I'M NOT GOING TO  -- I'M

7   NOT INCLINED TO GIVE THEM ALL THE THINGS THEY'RE ASKING FOR.  I'M

8   NOT INCLINED TO GIVE THEM COMMUNICATIONS WITH CONGRESS.  I'M

9   NOT INCLINED TO GIVE THEM YOUR COMMUNICATIONS BETWEEN THE

10  LAWYERS AND THE COMMISSION ITSELF -- I MEAN, THOSE SORTS OF

11  THINGS.

12        WHAT I'M FOCUSING ON ARE THESE EXTERNAL

13  COMMUNICATIONS WITH I THINK THE BRIEFING CALLED IT "THIRD

14  PARTIES" I THINK IS THE WAY IT WAS OFTEN DESCRIBED OR SOME OF THE

15  CASES CALL IT THAT.

16        THAT'S REALLY WHERE MY FOCUS IS RIGHT NOW.

17        AND I'M TRYING TO GET HELP FROM BOTH SIDES -- I HAVEN'T

18  GOTTEN OVER I KNOW TO THE DEFENDANT YET.  BUT I'M TRYING TO GET

19  ASSISTANCE FROM COUNSEL FROM BOTH SIDES TO HELP ME MAKE SURE

20  I'M UNDERSTANDING THIS PROBLEM CORRECTLY.

21        MS. GUARDI:  SO, I GUESS A QUESTION  -- I MEAN, SO, WE

22  TALKED ABOUT COMMUNICATIONS WITH THIRD PARTIES.

23        AND YOU'VE MADE THE POINT ABOUT BURDEN WITH RESPECT

24  TO THE COMMUNICATIONS FROM THE 57 EXAMINATION FILES.

25        I GUESS MY QUESTION WOULD BE AS TO THE RELEVANCE THEN

1    OF THE DEFICIENCY LETTERS WITHIN THOSE FILES – WHICH AS I NOTED

2    ARE, YOU KNOW, SOME OF THE MORE SENSITIVE DOCUMENTS CERTAINLY

3    MORE SO THAN THE COMMUNICATIONS.

4             AND I FEEL LIKE THE RELEVANCE ARGUMENT THERE WAS NOT

5    DEVELOPED.  AND THAT WOULD BE MY --

6             THE COURT:  WHAT DOES IT  -- IN ITS MOST GENERIC SENSE,

7    WHAT DOES A DEFICIENCY LETTER SAY?  I MEAN, WHAT DOES IT COVER?

8    WHAT'S THE CONTENT?

9             MS. GUARDI:  IT'S NOT -- FROM MY UNDERSTANDING, RIGHT,  IT'S

10   NOT WHAT I DO PERSONALLY.  BUT FROM MY UNDERSTANDING IT WOULD

11   BE, YOU KNOW, WE'VE CONDUCTED THIS EXAMINATION.  AND HERE ARE

12   THE LIST OF DEFICIENCIES THAT WE UNCOVERED DURING THAT

13   EXAMINATION.

14            THE COURT:  I THINK YOU'RE EXAMINING  -- WHAT?  -- THEIR

15   OFFERING?

16            MS. GUARDI:   THE BROKERED.  HERE IT WOULD BE ABOUT

17   EXAMINATIONS OF BROKER DEALERS.

18            THE COURT:  OKAY.

19            MR. BOUJOUKOS:  YOUR HONOR, MAYBE I CAN SHED A LITTLE

20   BIT OF LIGHT ON THIS.

21            THE COURT:  SURE.

22            MR. BOUJOUKOS:  I WAS AT THE COMMISSION FOR A DECADE,

23   SUPERVISED THE DIVISION OF EXAMINATIONS IN MY OFFICE.

24            SO, THE DEFICIENCY LETTER IS SOMETHING REQUIRED BY

25   STATUTE TO BE DELIVERED WITHIN 180 DAYS OF THE LAST RECEIPT OF

1    DOCUMENTS BY THE EXAMINATION STAFF.

2            IT CAN TAKE A COUPLE OF DIFFERENT FORMS.  THE

3    EXAMINATION STAFF GOES IN ORIGINALLY, ASKS THE BROKER DEALER

4    LIKE WESTERN TO PROVIDE A BUNCH OF INFORMATION ABOUT ITS

5    POLICIES AND PROCEDURES.  IT REVIEWS THEM.  AND THEN IT EITHER

6    SENDS A THANK YOU VERY MUCH, NOTHING FURTHER OR IT SENDS A

7    DEFICIENCY LETTER.

8            THE DEFICIENCY LETTER OUTLINES THE FLAWS THAT THE

9    EXAMINATION STAFF HAS DETECTED IN THE POLICIES OR PROCEDURES.

10   THE REGISTRANT LIKE WESTERN THEN HAS 60 DAYS WITH WHICH TO

11   RESPOND TO THAT BY TELLING THE EXAMINATION STAFF WHY THOSE ARE

12   NOT PROBLEMS OR HOW THEY'RE GOING TO REMEDY THOSE PROBLEMS.

13           AND, THEN, THE EXAMINATION STAFF HAS ANOTHER 60 DAYS, I

14   BELIEVE, TO RESPOND TO THAT LETTER.

15           IN OUR BRIEFING WE TALK ABOUT A RISK ALERT THAT WAS PUT

16   OUT BY THE EXAMINATION STAFF IN 2023 THAT KIND OF GOES THROUGH

17   ALL THE PROBLEMS THAT IT SAW AND RECORDED IN DEFICIENCY LETTERS

18   TO THE INDIVIDUAL REGISTRANTS.

19           SO, THE DEFICIENCY LETTER IS EXACTLY THE DOCUMENT

20   THAT'S GOING TO SAY WHAT THE EXAMINATION STAFF THINKS WAS

21   WRONG.  AND THE RESPONSE TO THAT DEFICIENCY LETTER IS EXACTLY

22   WHAT WE NEED TO UNDERSTAND WHATEVER CONFUSION OR

23   DISAGREEMENT THE INDIVIDUAL BROKER DEALER HAD.

24           THE COURT:  AND THESE ALL RELATE TO THIS PARTICULAR

25   REGULATION WE'RE TALKING ABOUT?

1          MR. BOUJOUKOS:  WELL, MY UNDERSTANDING FROM WHAT HAS

2    BEEN PUBLICLY RELEASED BY THE SEC IS THAT THE 57 EXAMINATIONS

3    ALONG WITH AN ADDITIONAL I THINK A HUNDRED EXAMINATIONS WERE

4    DONE SPECIFICALLY AT THE OUTSET OF THIS TO DETERMINE COMPLIANCE

5    AND INTO A SURVEY ABOUT WHETHER OR NOT THERE WAS CONFUSION

6    OR OTHERWISE WITH REGARD TO IMPLEMENTATION OF THIS REGULATION.

7    THEY STARTED ON JUNE 30TH.  SO, IMMEDIATELY AFTER THE REGULATION

8    BECAME EFFECTIVE AND HAD TO BE COMPLIED WITH.

9          SO, THIS IS EXACTLY THE KIND OF COMMUNICATIONS THAT ARE

10   DIRECTLY RELEVANT FOR ALL THE REASONS THAT YOUR HONOR HAS

11   POINTED OUT.

12         THE COURT:  SO, THE SEC RAISES, YOU KNOW, A GOOD POINT

13   THAT THE PEOPLE THAT THEY WERE SERVING AND GETTING

14   INFORMATION FROM DIDN'T EXPECT THAT THAT WOULD BECOME, YOU

15   KNOW, FODDER FOR A LAWSUIT IN FEDERAL COURT WITH A COMPETITOR

16   SEEING THEIR INFORMATION AND -- AND, YOU KNOW, WE HAVE -- YOU

17   KNOW, TYPICALLY WE'RE SENSITIVE TO THAT ARGUMENT.

18         I MEAN, WE'RE NOT SAYING IT'S DISPOSITIVE IN DISCOVERY

19   DISPUTES.  BUT IT'S SOMETHING WE'RE -- THAT FACTORS INTO

20   PROPORTIONALITY IN OTHER WORDS.

21         AND, SO, HOW DO YOU ADDRESS THAT TO BE FAIR TO THESE

22   OTHER COMPANIES SO THAT THEIR INFORMATION ISN'T MISUSED. YOU

23   KNOW, IT'S SORT OF SOMEONE GOING DOWN AS, YOU KNOW, ON A WILD

24   GOOSE CHASE OR SOMETHING.

25         MR. BOUJOUKOS:  SO, I CAN  -- I HAVE TWO PRIMARY

1    RESPONSES TO THAT, YOUR HONOR.

2              FIRST OF ALL, THERE'S A PROTECTIVE ORDER IN THIS ACTION.

3              SO, IF THAT'S CONFIDENTIAL BUSINESS INFORMATION, COURTS

4    KNOW HOW TO DEAL WITH THAT AND PROTECT IT.

5              IF THE SEC WANTS A TWO-TIERED CONFIDENTIALITY ORDER OR

6    AGREEMENT WITH REGARD TO THE USE OF THAT INFORMATION, THAT'S

7    SOMETHING THAT WE WOULD CERTAINLY AGREE TO.

8              SECONDLY IS WHILE THE SEC IN ITS BRIEFING WRITES THAT

9    THIS IS KEPT CONFIDENTIAL, WE CITE YOUR HONOR TO WHAT'S CALLED A

10   "1662," WHICH IS WHAT THEY GIVE TO ALL THESE REGISTRANTS WHEN

11   THEY ASK FOR THIS INFORMATION.  AND IT LISTS OUT I THINK 23 OR 25

12   PERMITTED USES INCLUDING RESPONDING TO SUBPOENAS.

13             SO, I UNDERSTAND WHAT THEY'RE SAYING.  BUT I THINK

14   EVERYBODY WHO IS IN THIS REGULATED INDUSTRY UNDERSTANDS THAT

15   THE SEC CAN USE THAT INFORMATION IN WHATEVER WAY IT SEES FIT

16   INCLUDING IN RESPONDING TO A SUBPOENA.  AND IT SAYS THAT

17   EXPLICITLY.

18             SO, I'M NOT  -- I'M NOT  -- I MEAN, CERTAINLY, WE DON'T WANT

19   OUR POLICIES  --

20             THE COURT:  RIGHT.

21             MR. BOUJOUKOS:   -- AND PROCEDURES SPLASHED ALL OVER

22   THE –

23             THE COURT:  -- I GET IT  --

24             MR. BOUJOUKOS:   -- PLACE.  BUT THEY DID THAT IN THE  -- IN

25   THE COMPLAINT WHEN THEY FILED IT.

1          BUT IN ANY EVENT, WE'RE  -- WE'RE NOT OPPOSED TO

2    AGREEING TO SOME KIND OF WAY TO PROTECT THAT AND MAKE SURE

3    THAT IT'S NOT EXPOSED TO THE PUBLIC IN A WAY THAT MIGHT BE

4    CONTRARY TO THE  -- TO THE INTERESTS OF ALL INVOLVED.

5          THE COURT:  SO, YOU DON'T THINK IT'S LIMITED TO 57

6    EXAMINATIONS.  YOU THINK THERE'S MORE THAN THAT IN THIS SURVEY

7    REGARDING THE REGULATION?

8          MR. BOUJOUKOS:  I THINK THERE WERE TWO  -- THERE WERE

9    TWO LEVELS TO IT, YOUR HONOR.

10          SO, I'M SORRY.  I DON'T HAVE A CITATION FOR YOU.  BUT WE –

11    WE HAVE ATTACHED TO THE  -- TO MY DECLARATION THE RISK ALERT

12    THAT DISCUSSES WHAT THEY DID.

13          I DON'T KNOW HOW MANY THE SECOND ROUND  -- THE SECOND

14    ROUND INVOLVED.  BUT I THINK IT WAS AROUND A HUNDRED.

15          AND, SO, THAT'S THE OUTSIDE NATURE OF THE UNIVERSE OF

16    THIS.

17          THE OTHER THING I WOULD SAY, YOUR HONOR, IS THAT WITH

18    REGARD TO BURDEN, THE EXAM STAFF LOOKED AT ALL OF THESE IN

19    CREATING THAT JANUARY 2023 RISK ALERT.

20          THEY SAY THEY RELIED ON THOSE IN NOTIFYING THE INDUSTRY

21    OF ALL THE CONCERNS THAT THEY HAD  -- THE EXAM STAFF HAD WITH

22    WHAT WAS GOING ON WITH COMPLIANCE OF THE REG-BI.

23          AND THIS IS – I'M REFERRING TO EXHIBIT T, I BELIEVE, YOUR

24    HONOR.

25          AND, SO, THAT IS TO GO INTO THE CALCULATION OF BURDEN,

1   ALSO.  YOU'LL SEE IN SOME OF THE CASES THAT HAVE BEEN CITED EVEN

2   IN  -- EVEN WHERE COURTS DO NOT WANT TO PROVIDE OR ARE

3   RELUCTANT TO ORDER THIS INFORMATION TO BE PRODUCED WHERE IT'S

4   ALREADY BEEN GATHERED BY THE SEC IN SOME MANNER.  THAT

5   REDUCES THE BURDEN ASSOCIATED WITH THAT.

6          AND THE LAST THING I'D SAY, YOUR HONOR, IS WE'RE NOT

7   LOOKING FOR EVERY SINGLE DOCUMENT THAT WAS PRODUCED IN

8   CONNECTION WITH AN EXAMINATION.  YOU KNOW, WE'RE FOCUSED ON

9   THE RULE – THE POLICIES AND PROCEDURES, THE DEFICIENCY LETTER,

10  THE RESPONSE AND ANY RESPONSE THERETO.

11         SO, THE EMAIL THAT SAYS, HEY, CAN YOU PRODUCE, YOU

12  KNOW, A COPY OF YOUR BLOTTER SHOWING SECURITY SALES IN  -- IN

13  2016, THAT'S NOT WHAT WE'RE TALKING ABOUT.

14         SO, I DON'T WANT THIS TO BE CONSTRUED ANY BROADER THAN

15  THE NARROW THING WE'RE ASKING FOR.  IT'S JUST ENOUGH TO

16  UNDERSTAND WHAT THE POLICIES AND PROCEDURES WERE, WHAT THE

17  SEC IDENTIFIED AS THE ISSUE  -- ISSUE WITH THOSE, IF ANY, AND WHAT

18  THE RESPONSE WAS OF THE  -- OF THE REGISTRANT.

19         THE COURT:  THIS IS THE  -- WHEN YOU SAY POLICIES AND

20  PROCEDURES, THIS IS THE POLICIES AND PROCEDURES OF THE

21  REGISTRANT?

22         MR. BOUJOUKOS:  CORRECT.  WITH REGARD TO REG-BI, YOUR

23  HONOR.

24         THE COURT:  RIGHT.  RIGHT.  THAT REGULATION.  RIGHT.

25         AND THEN THEY RESPOND WITH A DEFICIENCY LETTER.  AND

1    THEN THERE'S A RESPONSE TO THE DEFICIENCY LETTER.

2           AND, SO, YOU WANT THOSE – THAT SET OF COMMUNICATIONS

3    BASICALLY.

4           MR. BOUJOUKOS:  YES, YOUR HONOR.

5           THE COURT:  OKAY.

6           SO, I DON'T KNOW IF THAT'S WHAT YOU UNDERSTOOD

7    PREVIOUSLY FROM THE SEC'S PERSPECTIVE.  BUT IT SOUNDS LIKE IT'S

8    LESS THAN EVERYTHING IN THE FILE FOR -- FOR THESE -- WHETHER IT'S 57

9    OR A HUNDRED, I'M NOT SURE WHAT THE NUMBER IS EXACTLY WE'RE

10   DEALING WITH.

11          BUT DOES THAT AFFECT YOUR BURDEN AND YOUR

12   PROPORTIONALITY PROBLEMS?

13          MS. GUARDI:  WELL, I DO  -- I DO WANT TO PUSH BACK A LITTLE

14   BIT ON THE NOTION THAT THESE THINGS HAVE BEEN, QUOTE, UNQUOTE,

15   ASSEMBLED.

16          I  -- AND THE CASE THAT THEY CITE THERE IS  -- I THINK IT WAS

17   ATTACHED AS A  -- AS "G" TO MY DECLARATION, THE FIFE CASE.

18          THE COURT:  YEAH.

19          MS. GUARDI:  AND IT IS A COMPLETELY DIFFERENT SITUATION

20   AND I THINK ILLUSTRATIVE OF WHY WHAT THEY'RE ASKING FOR IS MORE

21   BURDENSOME.

22          SO, THERE WHAT HAPPENED WAS THE COURT ORDERED THE

23   SEC  -- BECAUSE THE SEC HAD ISSUED A STATEMENT SAYING THAT THEY

24   LOOKED AT 8  -- FORM 8-K'S WHICH ARE PUBLIC DOCUMENTS.  AND THEY

25   FOUND 207 OF THOSE PUBLIC DOCUMENTS THAT RELATED TO THIS

1    PARTICULAR ISSUE OF  -- PARTICULAR ISSUE -- DOESN'T MATTER.  AND

2    THEY SAID, WELL, IF YOU ALREADY ASSEMBLED THESE 207 PUBLIC

3    DOCUMENTS, THEN, IT'S NOT A HIGH BURDEN FOR YOU TO PRODUCE

4    THOSE.

5         IT IS A COMPLETELY DIFFERENT SITUATION THAN WHAT WE'RE

6    TALKING ABOUT HERE.  I THOUGHT WE WERE TALKING ABOUT 57.  IF NOW

7    WE'RE TALKING ABOUT 157.  BUT IT'S NOT PREVIOUSLY ASSEMBLED

8    DOCUMENTS.  IT WOULD BE SOMEBODY GOING THROUGH THE ENTIRE

9    EXAM FILES TO FIND WHAT IT IS THAT THEY FIND RELEVANT OR WANT

10    FROM THOSE EXAM FILES.

11         SO, IT IS  -- IT IS A DIFFERENT SITUATION THAN THE PRECEDENT

12    THAT'S –

13         THE COURT:  IT SOUNDS LIKE –

14         MS. GUARDI:  -- BEEN CITED.

15         THE COURT:   -- WE'VE BEEN TOLD THAT THEY'RE LOOKING FOR

16    THREE OR FOUR THINGS OUT OF THE EXAM FILE.

17         POLICES AND PROCEDURES THAT THE REGISTRANT PROVIDED

18    TO THE SEC.

19         THE SEC'S DEFICIENCY LETTER.

20         THE RESPONSE BY THE REGISTRANT

21         AND ANY FURTHER RESPONSE THEN BY THE SEC.

22         SO, THAT WOULD  -- THAT WOULD BE SOMETHING  -- IF YOU

23    HAVE 57 FILES, PRESUMABLY THOSE DOCUMENTS WOULD BE FAIRLY

24    READILY IDENTIFIABLE IN THE FILE AND COULD BE PULLED OUT FOR

25    PRODUCTION.

1          MS. GUARDI:  I'M CERTAINLY NOT STANDING UP HERE AND

2     SAYING IT COULD NOT BE DONE.

3          I'M JUST SAYING –

4          THE COURT:  IT DOESN'T EVEN SOUND LIKE IT WOULD BE HARD

5     TO  --

6          MS. GUARDI:  -- THE BURDEN  -- TO SAY THAT IT'S BEEN

7     PREVIOUSLY ASSEMBLED  --

8          THE COURT:  OKAY.

9          MS. GUARDI:  -- IS INACCURATE  --

10         THE COURT:  BUT  --

11         MS. GUARDI:   -- IS ALL THAT I'M SAYING.

12         THE COURT:   OKAY.  AND JUST AS A  -- I MEAN, THESE EXAM

13    FILES PRESUMABLY EXIST IN A  -- TOGETHER.  SO, YOU DON'T  --

14         MS. GUARDI:  CORRECT.

15         THE COURT:   YOU'D ONLY HAVE TO LOOK AT ONE  -- IN ONE

16    PLACE TO FIND THE DOCUMENTS FOR A PARTICULAR EXAM.

17         MS. GUARDI:  CORRECT.

18         THE COURT:  OKAY.

19         MS. GUARDI:  AND THE ONLY OTHER THING I DID WANT TO SAY IF

20    I MAY IN RESPONSE TO COUNSEL'S COMMENTS I THINK ANOTHER WAY TO

21    GET AT THE INFORMATION THAT'S BEING SOUGHT HERE, WE REFERENCED

22    THIS JANUARY 2023 RISK ALERT WHICH IS CHARACTERIZED HERE BY

23    COUNSEL AS SOME AMALGAMATION OR ANALYSIS OR SUMMARY OF

24    THESE FINDINGS.

25         SO, I THINK ANOTHER MUCH LESS BURDENSOME, MUCH LESS

1    IMPLICATING CONFIDENTIALITY AND CHILLING COOPERATION AND THE

2    OTHER ISSUES THAT WE'VE RAISED, IT'S JUST TO LOOK AT THE SUMMARY

3    ITSELF, YOU KNOW, WHAT IS THE INCREMENTAL VALUE TO GETTING THE

4    UNDERLYING DOCUMENTS IF YOU – IF YOU HAVE A SUMMARY IS THE  -- IS

5    THE OTHER POINT I WANTED TO MAKE IN RESPONSE.

6             THE COURT:  YEAH.  I WOULD ASSUME THE ANSWER IS GOING TO

7    BE WELL, THE SEC IS GOING TO PRESENT A SUMMARY.  I'M SURE THEY'RE

8    GOING TO BE FORTHRIGHT.  BUT IT MAY NOT BE THE SAME INFORMATION

9    THAT WE WOULD GLEAN IF WE LOOKED AT THE DOCUMENTS OURSELVES

10   FROM OUR PERSPECTIVE AS THE DEFENDANT HERE.

11            AND JUST TO RELY ON THE SEC'S SUMMARY IS NOT A COMPLETE

12   ANSWER TO WHAT WAS COMMUNICATED.

13            I MEAN, I ASSUME THAT'S WHAT THEY WOULD TELL ME.

14            AND I – I ASKED THEM  MYSELF.

15            MR. BOUJOUKOS:   I MEAN, YOUR HONOR, THIS IS  -- YOU KNOW,

16   THE COUNSEL IS TRYING TO SHORTCUT GETTING ACCESS TO THE ACTUAL

17   INFORMATION, THE ACTUAL FACTS THAT WE NEED TO SHOW THE LACK OF

18   ASCERTAINABLE CERTAINTY AS DEMONSTRATED BY -- AS DEMONSTRATED

19   BY THE ACTUAL ACTIVITIES OF BOTH THE SEC EXAMINATION STAFF AND

20   THE REGISTRANTS.

21            I MEAN, IF THAT WAS THE ANSWER, THEN, ALL OF THESE CASES

22   THAT ORDERED THIS KIND OF THIRD-PARTY PRODUCTION WOULD HAVE

23   ALLOWED THE SEC JUST TO PROVIDE AN INTERROGATORY RESPONSE IN

24   SUMMARY.  THAT'S  -- THAT'S NOT FACT, YOUR HONOR.

25            THE COURT:  RIGHT.

1        WELL, YOU'VE HEARD WHAT I INDICATED I'M LIKELY NOT GOING

2   TO ORDER PRODUCED.

3        MR. BOUJOUKOS:  RIGHT.

4        THE COURT:  DO YOU HAVE ANYTHING YOU WOULD LIKE TO SAY

5   ABOUT THAT?

6        MR. BOUJOUKOS:  IF I COULD BE BRIEFLY HEARD, YOUR HONOR

7   --

8        THE COURT:   SURE.

9        MR. BOUJOUKOS:   -- ON THE ISSUE OF CONGRESSIONAL

10  CORRESPONDENCE.

11        THE COURT:  OKAY.

12        MR. BOUJOUKOS:  SO, I UNDERSTAND THE COURT'S POINT.

13        I UNDERSTAND THE LIMITATIONS THAT ARE BEING DRAWN AND

14  THE REFERENCE TO THE CASES.

15        I WOULD SAY THAT THIS REGULATION IS UNIQUE IN THIS

16  REGARD.  THERE WAS A LOT OF QUESTIONING ON BEHALF OF

17  CONSTITUENTS AND INCLUDING THE INDUSTRY BY MEMBERS OF

18  CONGRESS TO THE SEC.

19        I DON'T UNDERSTAND IN THE RESPONSE WHAT – WHY THAT

20  INFORMATION IS PRIVILEGED.

21        I DON'T UNDERSTAND WHY IT SHOULD BE WITHHELD.

22  CONGRESS IS PERFORMING AN OVERARCHING SUPERVISORY FUNCTION

23  WITH REGARD TO THE SEC.

24        AND, SO, THE RESPONSE DOESN'T -- THE RESPONSE SUGGESTS

25  THAT THIS IS GOING TO HAVE TO BE LOGGED.  AND THERE'S GOING TO BE

1     COMMUNICATIONS WITH OTHERS.  BUT THIS COULD BE EXACTLY THE KIND

2     OF INFORMATION THAT DEMONSTRATES A CONCERN EXPRESSED BY

3     CONGRESS ABOUT THE VAGUENESS OF THIS REGULATION AND THE

4     RESPONSE BY THE SEC ABOUT HOW IT'S GOING TO ADDRESS THAT

5     MOVING FORWARD.

6             AND, SO, I UNDERSTAND THAT THE SEC HAS REPRESENTED TO

7     YOUR POINT ABOUT PROVIDING THE BASIS FOR ANY OBJECTION WITH

8     REGARD TO BURDEN.

9             THEY SAID THEY'VE LOOKED  -- WE IDENTIFIED ONE SPOT

10    WHERE WE THINK THIS CORRESPONDENCE IS GOING TO BE.  THERE'S A  --

11    THERE'S A GROUP OF PEOPLE THAT ARE RESPONSIBLE FOR THIS.

12            THEY'VE SAID THERE ARE POSSIBLY 10,000 RESPONSIVE

13    DOCUMENTS.

14            WE'RE NOT LOOKING FOR ALL OF THE UNDERLYING DOCUMENTS

15    AND – AND EMAILS ABOUT HOW THESE RESPONSES WERE CREATED, WHO

16    SAID WHAT INSIDE OF THE COMMISSION.  WE'RE NOT LOOKING FOR THAT

17    AT ALL.  ALL WE'RE LOOKING FOR IS WHAT CAME FROM CONGRESS AND

18    WHAT THE SEC SAID BACK.

19            AND THAT'S NOT THE WONDERINGS LIKE YOU SEE IN SOME OF

20    THESE CASES ABOUT AN EXAMINER NOT SPEAKING ON BEHALF OF THE

21    COMMISSION.

22            WHEN THE COMMISSION WRITES OR ITS REPRESENTATIVES

23    WRITE TO CONGRESS, THAT'S MAKING A STATEMENT TO SOMEONE

24    RESPONSIBLE FOR OVERSIGHT.  THAT'S NOT THE WONDERINGS OF AN  --

25    OF A ONE-OFF PERSON INSIDE THE SEC.

1        AND, SO, WE DON'T WANT ANY OF THE PRIVILEGED MATERIAL  --

2    PRIVILEGED MEANING PRIVILEGE WITHIN THE SEC.

3        I DON'T UNDERSTAND HOW THOSE COMMUNICATIONS COULD BE

4    PRIVILEGED.  AND GIVEN THE -- GIVEN THE AMOUNT OF SCRUTINY AND

5    QUESTIONING THERE WAS ABOUT THIS REGULATION, WE THINK THERE'S,

6    YOU KNOW, SUBSTANTIAL LIKELIHOOD THAT WE'RE GOING TO FIND SOME

7    QUESTIONS FROM CONSTITUENTS MADE THROUGH -- OR FROM THE

8    INDUSTRY MADE THROUGH THESE – THESE CONGRESS PEOPLE AND

9    RESPONSE FROM THE SEC WITH REGARD TO HOW THESE REGULATIONS

10   ARE GOING –

11       THE COURT:  I ASSUME THEY'RE – THERE'S A LOT OF SCRUTINY.

12   SOME OF THIS MUST BE PUBLIC THAT YOU'VE LOCATED.

13       MR. BOUJOUKOS:  WELL, THERE WERE HEARINGS.

14       THE COURT:   RIGHT.

15       MR. BOUJOUKOS:  THERE WERE HEARINGS, YOUR HONOR.

16       BUT IT DOES NOT APPEAR THAT THOSE ARE  -- I MEAN, THEY'RE

17   SOME.  AND THERE ARE A LOT OF QUESTIONS.  BUT THERE AREN'T MANY

18   ANSWERS.

19       THE COURT:  OKAY.

20       SO, FROM THE SEC'S PERSPECTIVE, HAVE YOU LOOKED AT

21   WHAT EXISTS IN THIS REALM OF COMMUNICATIONS WITH CONGRESS

22   REGARDING THE REGULATION OR PROPOSED REGULATION?  -- HOW

23   MUCH IS IT?  WHY DO YOU SAY YOU SHOULDN'T PRODUCE IT?

24       GETTING MORE SPECIFIC PROBABLY THAN MY INITIAL REACTION.

25       WHAT DO YOU KNOW ABOUT THAT?

1      MS. GUARDI:  SURE, YOUR HONOR.

2      AND THIS I BELIEVE IS IN THE DECLARATION.  ALTHOUGH, I HAVE

3   TO APOLOGIZE BECAUSE I IN THE DECLARATION REFERRED TO THE

4   WRONG REQUEST FOR PRODUCTION.  I REFERRED TO 15.  AND WE'RE

5   TALKING NOW ABOUT 14.

6      BUT THE NUMBER IS AS COUNSEL SAID ALMOST 10,000

7   DOCUMENTS.  AND THAT'S JUST FROM THIS REPOSITORY IDENT- -- OR

8   SOURCE IDENTIFIED BY COUNSEL, THE OLIA.

9      I'VE – I'VE LOOKED AT WHAT'S IN THERE PERSONALLY.  THERE'S

10  A LOT OF MEMOS BACK AND FORTH BETWEEN THE PEOPLE RESPONSIBLE

11  FOR HAVING THIS CORRESPONDENCE WITH THE SEC.   AND VARIOUS

12  CONGRESS PEOPLE, THEY ARE ALMOST EXCLUSIVELY SUBSUMED WITHIN

13  LARGER MEMOS WITH MANY, MANY QUESTIONS ABOUT MANY HOT

14  BUTTON ISSUES THAT IMPLICATE THE SEC AND CERTAINLY DON'T

15  IMPLICATE THIS CASE AT ALL.

16      WITH, YOU KNOW, THAT ARE SENSITIVE THEREFORE AND

17  MOSTLY IRRELEVANT THEREFORE TO THIS CASE.

18      I  -- IF I COULD JUST SAY ONE MORE THING.  AND THIS ISN'T I

19  KNOW DIRECTLY RESPONSIVE TO THE QUESTION YOU ASKED ME.  BUT

20  THERE  -- THERE'S NO PRECEDENT FOR DOING THIS.  NO -- EVEN IN  --

21  EVEN IN RIPPLE, NOBODY HAS EVER THAT I COULD FIND GOTTEN THIS

22  TYPE OF DOCUMENT ABOUT A REGULATION.

23      AND EVEN IN RIPPLE, THIS  -- AND THIS IS AN IMPORTANT

24  DISTINCTION.  WHEN WE'RE TALKING ABOUT CORRESPONDING TO THIRD

25  PARTIES, THERE WAS CORRESPONDENCE WITH THIRD PARTIES ABOUT

1    THAT SECURITY OR OTHER SIMILAR SECURITIES NOT ABOUT A LAW.

2        I KNOW NOTHING IS CITED WHERE, YOU KNOW, YOU GO INTO

3    THIRD-PARTY CORRESPONDENCE ABOUT THE LAW.  AND CERTAINLY NOT

4    WITH  -- CERTAINLY NOT WITH CONGRESS.

5        SO, I JUST  -- I  -- I THANK YOU FOR ALLOWING ME TO BE – BE

6    HEARD FURTHER ON THAT.

7        THE COURT:  WHAT WOULD YOU  -- I MEAN, IF I'M GOING TO

8    COME UP WITH A SUCCINCT REASON WHY I SAY, WELL, I'M NOT GOING TO

9    ALLOW THEIR DISCOVERY INTO THESE COMMUNICATIONS, ONE OF THEM I

10    GATHER WHAT YOU'RE SAYING IS THE COMMUNICATIONS ARE LARGELY

11    IRRELEVANT BECAUSE THEY DEAL WITH OTHER SUBJECTS.

12        AND THE PROCESS OF SORTING THROUGH 10,000 DOCUMENTS

13    TO TRY TO FIND SOMETHING THAT WOULD BE RELEVANT IS

14    DISPROPORTIONAL TO THE NEEDS OF THE CASE IN LIGHT OF OTHER  --

15    OTHER WAYS THEY HAVE TO JUST TAKE DISCOVERY OF FAIR NOTICE

16    ISSUES, RIGHT?

17        MS. GUARDI:  EXACTLY.  AND YOUR HONOR MAKES A GREAT

18    POINT ABOUT THOSE OTHER SOURCES BECAUSE NOT ONLY IS THERE

19    CONGRESSIONAL TESTIMONY THAT THEY MIGHT EXAMINE.  BUT, OF

20    COURSE, THERE WAS A LONG COMMENT  -- PUBLIC COMMENT PERIOD FOR

21    THIS REGULATION.  AND I DON'T HAVE THE NUMBERS.  I APOLOGIZE.

22    MAYBE COUNSEL DOES.  BUT THERE WAS EXTENSIVE PUBLIC COMMENT

23    ON THIS REGULATION BEFORE IT WAS ENACTED.

24        SO, IT COULD  -- IT WOULD CERTAINLY PROVIDE THEM WITH

25    PLENTY OF FODDER WITH PEOPLE WHO ARE UNHAPPY WITH THIS

1    REGULATION.

2            THE COURT:  OKAY.  ANYTHING FINAL FROM THE DEFENDANT?

3            MR. BOUJOUKOS:  YOUR HONOR, I'M NOT SURE I UNDERSTAND

4    WHAT THIS 10,000 DOCUMENTS THE BURDEN IS.

5            THERE WERE 10,000 EMAILS DURING THE RELEVANT TIME

6    PERIOD THAT WE'VE  -- THE NARROW RELEVANT TIME PERIOD THAT WE'VE

7    -- THAT WE'VE ASKED FOR WITH  -- BY AND BETWEEN CONGRESS AND THE

8    SEC.

9            I MEAN, THAT'S  -- IS THAT WHAT THE --

10            THE COURT:  I THINK WHAT SHE SAID WAS THERE'S 10,000

11    PAGES I THOUGHT SHE WAS SAYING, BUT MAYBE IT WAS 10,000

12    DOCUMENTS.

13            MS. GUARDI:  THAT HIT.  THAT HIT ON THE  -- I – I'LL HAVE TO

14    LOOK WHETHER IT WAS PAGES OR DOCUMENTS.

15            MR. BOUJOUKOS:  SEARCH TERMS.  ALL WE'RE LOOKING FOR IS

16    SOMETHING FROM A CONGRESSIONAL EMAIL ADDRESS TO AN SEC EMAIL

17    ADDRESS OR BACK.

18            THE COURT:  YEAH.  AND I THINK WHAT SHE'S SAYING IS THEY

19    USUALLY HAVE MUCH MORE THAN JUST A COMMENT ABOUT THIS

20    REGULATION.  THEY'RE DEALING WITH MUCH BROADER SUBJECTS THAT

21    ARE SENSITIVE.

22            AND THIS WHOLE THING IS A LITTLE BIT SOUNDING LIKE – YOU

23    KNOW, THE PROVERBIAL FISHING EXPEDITION.  YOU MIGHT FIND

24    SOMETHING, BUT THE BURDEN OF GETTING THERE AND THE POTENTIAL

25    RISKS TO OTHER INTERESTS IS GREAT.  AND PARTICULARLY WHEN YOU

1    HAVE OTHER SOURCES OF INFORMATION THAT WOULD HELP YOU

2    DETERMINE IF THERE'S REALLY A FAIR  -- A FAIR NOTICE PROBLEM HERE I

3    THINK IS KIND OF WHAT THEY'RE SAYING.

4              AND I FIND THAT PERSUASIVE TO SOME EXTENT.

5              MR. BOUJOUKOS:  SO, I WOULD MAKE  -- I WOULD OFFER ONE

6    MORE ARGUMENT WITH YOUR HONOR'S INDULGENCE.

7              THE COURT:  OKAY.

8              MR. BOUJOUKOS:  I DON'T THINK WE'RE ASKING FOR

9    SUBDRAFTS.  AND I THINK MERELY EXPLAINING THAT THAT'S HOW

10   CONGRESS COMMUNICATES ABOUT IMPORTANT ISSUES THAT IT HAS

11   CONCERNS ABOUT DRIVES A LEVEL OF RELEVANCE IN MY BOOK HIGHER

12   NOT LOWER.

13             THEY CAN REDACT OUT EVERYTHING ELSE.  WE'RE NOT

14   LOOKING FOR EVERY OTHER QUESTION THAT CONGRESS HAS.

15             THE COURT:  THAT'S A BIG -- YOU KNOW, REDACTION IS A BIG

16   PROBLEM.  I KNOW FROM MY OWN EXPERIENCE IN PRIVATE LITIGATION IF

17   YOU GET INTO DOCUMENTS THAT COVER MULTIPLE SUBJECTS, AND

18   YOU'VE GOT TO GO THROUGH THAT DOCUMENT WITH A FINE-TOOTH COMB

19   TO FIND THE REFERENCES TO WHAT YOU'RE TALKING ABOUT AND

20   REDACT EVERYTHING ELSE, IT'S A REAL DIFFICULT PROCESS.  AND YOU

21   RUN RISKS OF EITHER NOT REDACTING SOMETHING YOU SHOULD HAVE

22   AND THEN YOUR OWN CLIENT IS UPSET.   OR REDACTING TOO MUCH.

23             AND THEN YOU COME IN AND SAY, WELL, I CAN'T EVEN TELL

24   WHAT THIS IS ABOUT BECAUSE THEY'VE REDACTED SO MUCH.

25             AND IT'S A  -- THERE'S NO GOOD ANSWER USUALLY WHEN YOU

1    GET INTO A LOT OF REDACTIONS.

2           MY INCLINATION IS TO STAY AWAY FROM THAT.  I THINK IT'S A

3    BIG BURDEN.  AND A LOT OF THIS IS HYPOTHETICAL THAT YOU THINK

4    WHAT MIGHT BE THERE MIGHT NOT BE THERE.

5           YOU KNOW, I THINK I'M INCLINED TO GIVE YOU WHAT IS

6    PROBABLY THE MOST IMPORTANT STUFF.  AND I'M NOT INCLINED TO GIVE

7    YOU THE STUFF WITH CONGRESS.

8           SO  --

9           MR. BOUJOUKOS:  YOUR HONOR, I'LL  -- WE'LL TAKE THAT AND

10   GO HOME.

11          THE COURT:  OKAY.

12          MR. BOUJOUKOS:  I DO HAVE ONE MORE ISSUE IF  -- IF WE'RE

13   DONE WITH THIS PART OF IT, ONE OF THE REQUESTS THAT I JUST WANTED

14   TO CLARIFY  --

15          THE COURT:  OKAY.

16          MR. BOUJOUKOS:   -- NOW.

17          I THINK YOUR HONOR MENTIONED.

18          THE COURT:  OKAY.

19          MR. BOUJOUKOS:  IT INVOLVES COMMUNICATIONS WITH FINRA

20   AND THE SEC  -- THIS IS  -- THIS IS DOCUMENT REQUEST NUMBER 16,

21   WHICH THE SEC HAS TAKEN THE POSITION IT HAS FULLY COMPLIED WITH.

22          BUT I WOULD NOTE THAT WE HAVE TWO CONTINUING

23   OBJECTIONS TO THAT – TO THE SEC'S POSITION.

24          THE FIRST IS IN THE RESPONSE  -- IN THE SUPPLEMENTAL

25   RESPONSE WHICH WE RECEIVED AFTER WE HAD SERVED OUR DRAFT OF

1    THE JOINT STIPULATION, THE SEC ANSWERED DOCUMENT REQUEST 16

2    AND LIMITED IT TO COMMUNICATIONS UP AND TO THE DATE OF THE FILING

3    OF THE COMPLAINT.

4          WE DON'T WANT THAT DATE RESTRICTION.

5          SO, TO THE EXTENT THE SEC HAS SAID THAT THAT IS DONE

6    BECAUSE THEY'RE PRODUCING THOSE DOCUMENTS, I THINK THEY'RE

7    PRODUCING THEM SUBJECT TO THE LIMITATION  -- THE DATE LIMITATION

8    WHICH WE OBJECT TO.

9          JUST TO GIVE YOU A LITTLE BIT OF BACKGROUND, YOUR HONOR,

10   FINRA IS A – IS ANOTHER QUASI GOVERNMENTAL ENTITY THAT IS

11   RESPONSIBLE ALONG WITH THE SEC FOR ENFORCING REG-BI.

12         FINRA DID AN EXAMINATION AS NOTED IN THE COMPLAINT OF

13   WESTERN AFTER REG-BI WENT EFFECTIVE.  FINRA DID NOT DETECT THE

14   VAST MAJORITY OF THINGS THE SEC IS NOW SUING WESTERN FOR.

15         SO, IN OUR VIEW FINRA IS GOING TO BE A WITNESS IN THIS

16   CASE.  AND ANY COMMUNICATIONS THAT THE SEC IS HAVING WITH FINRA

17   WITH REGARD TO THIS ACTION OR WITH REGARD TO WESTERN IN

18   GENERAL WE THINK WE SHOULD BE ABLE TO DISCOVER.

19         THE SECOND ASPECT OF THIS  -- SO, I WOULD NOTE THAT THE

20   SEC HAS AGREED TO PRODUCE EVERYTHING PRIOR TO THE DATE OF

21   FILING OF THE COMPLAINT.

22         THE SECOND PART OF THIS IS IT IS WITHHOLDING THE -- SOME

23   EXAMINATION OVERSIGHT MATERIAL.

24         APPARENTLY, IN THE BEGINNING OF THIS YEAR THE SEC WHICH

25   IS RESPONSIBLE FOR SUPERVISING OR EXAMINING FINRA INITIATED AT

1    LEAST ONE, IF NOT MORE THAN ONE, EXAMINATIONS OF FINRA

2    SPECIFICALLY INVOLVING WESTERN, WHICH IS VERY CONCERNING TO US

3    BECAUSE TO THE EXTENT THAT IT RELATES TO MATTERS THAT ARE AT

4    ISSUE IN THIS  -- IN THIS ACTION  -- SUCH AS THE  -- THE

5    APPROPRIATENESS AND PROPRIETY AND COMPLETENESS OF FINRA'S

6    EXAMINATIONS, WE'RE CONCERNED THAT THERE'S GOING TO BE SOME

7    PRESSURE ON FINRA TO TAKE THE POSITION THAT MAYBE IT MADE A

8    MISTAKE OR OTHERWISE.

9            AND, SO, WE'D JUST LIKE TO UNDERSTAND WHAT THE NATURE

10   OF THAT INQUIRY IS AND WHETHER OR NOT IT HAS ANYTHING TO DO WITH

11   REG-BI OR FINRA'S PRIOR EXAMINATION OF WESTERN.

12            AND, AGAIN, I THINK IT'S RELEVANT  --

13            THE COURT:  WAS ALL OF THAT -- WHAT YOU JUST TALKED TO

14   ME ABOUT, NUMBER 16 AND UP TO THE COMPLAINT FILING AND THE SEC'S

15   OVERSIGHT OF FINRA, IS THIS IN THE BRIEFING?  OR IS THIS A NEW ISSUE

16   THAT'S COME UP AFTERWARDS?

17            MR. BOUJOUKOS:  IT'S IN THE BRIEFING, YOUR HONOR.

18            SO, WE MOVED TO COMPEL ON THIS.

19            THE COURT:  OKAY.

20            MR. BOUJOUKOS:  AND THE SEC SAID THAT IT WAS ANSWERED.

21            AND WE DON'T THINK IT'S ANSWERED BECAUSE THEY'RE

22   LIMITING THEIR RESPONSE.

23            THE COURT:  OKAY.

24            IS THAT CORRECT?  ARE YOU LIMITING YOUR RESPONSE TO A

25   DATE OF THE COMPLAINT BEING FILED?

1          MS. GUARDI:  THAT IS CORRECT.

2          THE COURT:  OKAY.  AND WHAT'S THE RATIONALE ABOUT THAT?

3          MS. GUARDI:  THERE'S A COUPLE OF THINGS, YOUR HONOR.

4     LOGISTICAL AND ALSO RELATED TO PRIVILEGE.

5          SO, MY UNDERSTANDING IS THAT THESE ARE ONGOING

6     INVESTIGATIONS.  THEY ARE NOT -- I DON'T KNOW THAT IT'S FAIR TO SAY

7     THEY'RE SPECIFICALLY ABOUT WESTERN.

8          AND THIS IS IN MY DECLARATION.  THERE'S A LONG LIST OF

9     EXAMINATIONS OF FINRA.  SO, THAT'S HOW  -- THAT'S MY UNDERSTANDING

10    HOW IT WORKS YOU GET  -- THERE'S LIKE A LETTER.  GIVE US X, Y, Z

11    DOCUMENTS ON THIS MYRIAD OF FINRA EXAMINATIONS.

12         BECAUSE IT IS ONGOING – THAT'S WHY I SAY LOGISTICALLY

13    DIFFICULT.  I DON'T KNOW  -- I MEAN, IT MUST BE LIKE A REAL --

14         THE COURT:  I MEAN, THERE IS A LOGISTICAL PROBLEM  --

15         MS. GUARDI:  -- A REAL --

16         THE COURT:  -- HOW DO YOU  -- EVERY TIME.

17         MS. GUARDI:  -- TIME  --

18         THE COURT:  YEAH.  I UNDERSTAND.  IT'S A PROBLEM IF EVERY

19    TIME SOMETHING IS CREATED YOU THEN HAVE TO SEND A COPY TO

20    OPPOSING COUNSEL.  THAT'S USUALLY NOT TYPICAL IN A LAWSUIT.

21    USUALLY SOME DEADLINE WHEN IT STOPS.  BUT I'M NOT SURE WHETHER

22    THIS IS AN APPROPRIATE DEADLINE THAT YOU'RE SETTING HERE IN

23    TERMS OF THE FILING OF THE COMPLAINT.

24         MS. GUARDI:  SURE.

25         SO, BECAUSE OF THE ONGOING NATURE OF IT, I'M NOT SURE

1    THAT THERE'S GOING TO BE ANYTHING RELEVANT IN THOSE FILES

2    BECAUSE NOBODY HAS REACHED ANY DETERMINATIONS TO MY

3    UNDERSTANDING IN LIKE THE DOCUMENT EXCHANGE PHASE.  AND, AGAIN,

4    WE'RE TALKING ABOUT DOCUMENTS ABOUT SCORES OF REGISTRANTS

5    AND FINRA EXAMINATIONS NOT – NOT JUST THIS ONE.

6         SO  -- AND THEN MY LAST POINT ON THIS IS WERE THIS TO BE

7    DEEMED RELEVANT AND RESPONSIVE AND WERE WE TO BE ORDERED OR

8    REQUESTED TO EXPAND THE SCOPE -- TEMPORAL SCOPE OF THIS, OUR

9    AGREEMENT ON THIS ONE, I THINK ALL OF THOSE DOCUMENTS WOULD

10   LIKELY BE PRIVILEGED EITHER UNDER THE SEC'S PRIVILEGE OR, OF

11   COURSE, WE WOULD NEED TO LOOP IN FINRA TO SEE IF THE DOCUMENTS

12   ARE  – ARE PRIVILEGED ACCORDING TO FINRA.

13        AND THEN  -- AND THAT'S WHERE WE GET INTO THE OTHER

14   ASPECT OF THE TEMPORAL LIMITATION HERE.

15        I MEAN, WE ARE – WE ARE AND HAVE AGREED TO PRODUCE

16   DOCUMENTS  -- OUR COMMUNICATIONS WITH FINRA, RIGHT?

17        SO, AM I GOING TO HAVE EMAILS BACK AND FORTH WITH FINRA'S

18   COUNSEL SAYING DO YOU WANT TO INVOKE YOUR PRIVILEGE AS TO

19   THESE DOCUMENTS.  THAT WOULD BE THE ORDINARY COURSE OF -- OF

20   THINGS, RIGHT.

21        SO, THIS KIND OF MY PRACTICE OF  -- OF LITIGATING THIS CASE

22   AND CORRESPONDING WITH FINRA IN THAT RESPECT, IT'S NOT RELEVANT

23   TO ANYBODY.  BUT IT'S – IT'S  -- SO THAT'S WHY  -- THAT'S ANOTHER

24   REASON WHY THAT TEMPORAL LIMITATION WAS ON THERE.

25        MR. BOUJOUKOS:  YOUR HONOR, I'M  -- FRANKLY, I'M NOT SURE I

1    UNDERSTOOD THAT.

2              I MEAN, WE ASKED THIS REQUEST.  IT WAS AS IT WAS.

3              THERE WAS NO ARTICULATION OF WHAT PRIVILEGE WOULD

4    ATTACH.  THERE WAS A STATEMENT THAT THEY WERE GOING TO

5    PRODUCE EVERYTHING THAT WE ASKED FOR.

6              BUT THEY'RE NOT GOING TO DO THAT.  THEY'RE GOING TO

7    PRODUCE IT SUBJECT TO MULTIPLE OBJECTIONS THAT ARE NOT FULLY

8    BRIEFED.  AND THEY'RE NOT ARTICULATED.

9              AND ALL OF THIS SOUNDS VERY HYPOTHETICAL TO ME.

10             ALL WE – WE DON'T WANT  -- WE DON'T WANT TO DIG BEHIND

11   WHAT THE SEC IS TRYING TO ACCOMPLISH.  WE JUST WANT TO

12   UNDERSTAND WHAT THEY'RE DOING.

13             IS FINRA BEING ASKED TO GO BACK AND REVISIT THE WESTERN

14   EXAMINATION THAT WE -- WE HAVE CONTENDED IN THE ANSWER TO THE

15   COMPLAINT DEMONSTRATED THAT WE ACTED IN  -- IN GOOD FAITH

16   REASONABLY.

17             THE COURT:  I MEAN, ONE WAY YOU COULD THINK ABOUT IT IF

18   FINRA DOESN'T GO BACK AND REDO THE EXAMINATION, THEN, IT'S ALL A

19   MOOT POINT, RIGHT?

20             YOU'VE GOT AN EXAMINATION THAT DIDN'T RAISE THE ISSUES

21   THAT  -- AND YOU'RE HAPPY WITH IT.  IF THEY DO GO BACK AND REDO IT,

22   THEN, YOU'LL BE ASKING THEM WHY DID YOU REDO IT.

23             AND THEY – IF THEY   -- THEN IT'S A LIVE ISSUE.

24             WELL, THE SEC TOLD US TO REDO IT.

25             BUT RIGHT NOW THEY HAVEN'T STARTED REDOING IT.  SO, WHAT

1    ARE WE LOOKING FOR.

2              MR. BOUJOUKOS:  WELL, YOUR HONOR, THEY'RE GOING TO BE

3    WITNESSES.

4              SO, I WANT TO UNDERSTAND WHETHER THEY'RE BEING TOLD BY

5    THEIR REGULATOR THAT THEY DID THIS WRONG.  THAT'S GOING TO

6    INFLUENCE THEIR TESTIMONY.

7              THE COURT:  WELL, I'LL LOOK  --

8              MR. BOUJOUKOS:  THAT'S GOING TO INFLUENCE THEM.

9              THE COURT:  I'LL  -- I'LL HAVE TO GO BACK AND LOOK MORE –

10   YOU'RE SAYING THIS IS BRIEFED WHAT YOU'RE TELLING ME ABOUT OR IT'S

11   NOT?

12             MR. BOUJOUKOS:  WELL, YOUR HONOR, IT'S FROM OUR

13   PERSPECTIVE.  WE ASKED FOR IT.

14             AND THE SEC SIMPLY SAID THEY – THE REST OF THESE

15   ARGUMENTS THEY'RE MAKING NOW ARE NOT BRIEFED.

16             FROM OUR PERSPECTIVE THE RELEVANCE OF THIS

17   INFORMATION AND WHY WE WANT IT IS BRIEFED.

18             THE COURT:  ALL RIGHT.  I'LL TAKE A LOOK AT IT.  I'LL TAKE A

19   LOOK AT IT IN THE BRIEFING.

20             OKAY.  ANYTHING ELSE TODAY FROM THE – FROM THE SEC?

21             MS. GUARDI:  WELL, I JUST – FORGIVE ME, YOUR HONOR.  I'M

22   JUST GOING THROUGH THIS.  I JUST WANT TO BE CLEAR ABOUT WHERE

23   WE LANDED ON EVERYTHING.

24             THE COURT:  WELL, WE HAVEN'T LANDED ANYWHERE YET.  I'M

25   GOING TO  --

1          MS. GUARDI:  OKAY.

2          THE COURT:  -- GO BACK AND TAKE A LOOK AT ALL OF IT.

3          BUT IF THERE'S ANYTHING ELSE YOU WANT TO TALK TO ME

4   ABOUT, GO AHEAD NOW.

5          MS. GUARDI:  SO, FORGIVE ME IF YOU FEEL THAT THIS WAS

6   COVERED BY OUR FIRST CONVERSATION ABOUT THE DOCUMENTS WITHIN

7   THE 57 OR HOWEVER MANY EXAMINATIONS --

8          THE COURT:  RIGHT.  IN THE EXAMINATIONS.  RIGHT.

9          MS. GUARDI:  BUT THE OTHER ISSUE THAT I WAS THINKING

10  ABOUT GOING INTO TODAY WAS WITH RESPECT TO REQUEST -- I THINK

11  IT'S 23 THROUGH 28 WHERE WESTERN SOUGHT GUIDANCE.  AND WE DID

12  NOT OBJECT TO THOSE REQUESTS.

13         AND WE PRODUCED DOCUMENTS, LIKE 800 SOME DOCUMENTS.

14         WE DIDN'T INDICATE WE WERE WITHHOLDING ANYTHING.  AND,

15  YET, THOSE REQUESTS WERE  -- ARE BEFORE YOUR HONOR IN THIS

16  MOTION TO COMPEL.

17         I DON'T KNOW WHAT ELSE THEY'RE ASKING FOR.  I MEAN, MAYBE

18  THE ANSWER IS JUST THESE OTHER MATERIALS FROM THE EXAMINATION

19  FILES WHICH WE'VE DISCUSSED.  AND THAT'S FINE.  WE'LL DO WHAT YOUR

20  HONOR WANTS US TO DO WITH RESPECT TO THOSE.

21         IF IT'S ANYTHING ELSE, I'M NOT AWARE OF IT.  IT HASN'T BEEN

22  RAISED.  NO DEFICIENCIES HAVE BEEN RAISED TO ME.

23         I  -- AND I JUST WANTED TO PUT THAT OUT THERE.

24         I'M SURE THAT I WOULD BE  -- IF THERE WAS SOMETHING ELSE

25  SPECIFIC, I'M SURE I COULD BE PREPARED TO DISCUSS THE BURDEN OF

1   THAT OR PRIVILEGE ISSUES OR  --

2          THE COURT:  I'LL TELL YOU WHAT I  -- THE WAY I USUALLY DO

3   THESE SORT OF ORDERS IS I DO IT BY THE TYPE OF DOCUMENT RATHER

4   THAN BY ME TRYING TO SORT OUT EVERY REQUEST.

5          I DON'T GO THROUGH WELL, HERE'S REQUEST 5.  IT'S GRANTED

6   AS TO 5.

7          REQUEST 6, DENIED.

8          I DON'T FIND THAT ALL THAT HELPFUL TO ME OR THE PARTIES.

9   I'D RATHER SAY LOOK AT  -- I'M GOING TO DENY THE REQUEST FOR THE  --

10  WHATEVER.  I'M JUST HYPOTHETICALLY  -- DENY THE REQUEST FOR THE

11  CONGRESSIONAL STUFF.  DENY THE INTERNAL REQUEST.  BUT AS TO THE

12  EXAMS, YES, YOU'VE GOT TO PRODUCE THE FIVE TYPES OF DOCUMENTS

13  THAT WERE DISCUSSED HERE IN THE HEARING.

14         I DON'T KNOW EXACTLY WHAT REQUEST THAT MAY OR MAY NOT

15  CORRESPOND TO.  I KNOW IT'S AT ISSUE.

16         FOR THE REST OF  -- THEN I MAY SAY THE REST OF THEM ARE

17  DENIED.

18         BUT YOU KNOW WHAT YOU HAVE TO PRODUCE.  YOU KNOW, I

19  WAS A LAWYER JUST LIKE YOU GUYS.  I KNOW THAT -- EVERYBODY

20  WRITES ALL THESE VERY COMPLICATED REQUESTS FOR PRODUCTION.

21  YOU KNOW, IT'S LIKE A TELMUDIC EXERCISE TRYING TO INTERPRET ALL

22  OF THEM.

23         I DON'T HAVE ENOUGH TIME FOR THAT.  AND I DON'T THINK

24  MOST PEOPLE DO.

25         SO, I TRY TO JUST TELL YOU WHAT YOU HAVE TO PRODUCE AND

1    WHAT YOU DON'T HAVE TO PRODUCE.

2            AND THAT'S WHAT I'M PROBABLY GOING TO DO HERE TODAY.

3            AND I'M NOT GOING TO  -- IF 23 TO 28 AREN'T DISPUTED, THEY

4    AREN'T DISPUTED.  BUT I'M NOT GOING TO GET INTO THEM BY A

5    REQUEST-BY-REQUEST BASIS LIKELY IN MY ORDER.  I'M JUST NOT GOING

6    TO TRY TO SORT IT OUT THAT WAY.

7            OKAY.

8            MR. BOUJOUKOS:  AND, YOUR HONOR, WHAT I WOULD SAY TO

9    THAT IS I THINK YOU HIT IT ON THE HEAD WHEN YOU STARTED WHERE THE

10   OVERLY NARROW DEFINITION OF WHAT IS GUIDANCE.

11           AND, SO, I THINK YOU'VE – YOU'VE  -- YOU'VE ANSWERED THIS

12   QUESTION.

13           AND WE'RE PRETTY SPECIFIC ABOUT WHAT WE WANT SPECIFIC

14   DOCUMENTS IN THERE TO THE EXTENT THAT YOU'RE LISTING ALL THE

15   DOCUMENTS THAT WE'VE TALKED ABOUT --

16           THE COURT:  RIGHT.

17           MR. BOUJOUKOS:  -- TODAY.

18           THE COURT:  RIGHT.  YOU TOLD ME.  RIGHT.

19           MR. BOUJOUKOS:  RIGHT.  I MEAN, THEY'RE  -- THEY'RE LISTED IN

20   OUR – THEY'RE LISTED IN OUR ORDER.

21           THE COURT:  OKAY.

22           ALL RIGHT.

23           I APPRECIATE YOUR TIME TODAY.

24           THANK YOU FOR BOTH SIDES HELPING ME.  I APPRECIATE IT.

25           MS. GUARDI:  THANK YOU, YOUR HONOR.

1          MR. BOUJOUKOS:  THANK YOU, YOUR HONOR.

2               (PROCEEDINGS CONCLUDED.)

3

4               TRANSCRIBER'S CERTIFICATE

5                    DISCLAIMER

6

7     THE INTEGRITY OF THIS TRANSCRIPT MAY BE ADVERSELY AFFECTED

8     DUE TO MUFFLED AND UNCLEAR AUDIO TRANSMISSION.

9

10         I, Dorothy Babykin, attest that the foregoing proceedings provided to me

11    electronically were transcribed by me to the best of my ability.

12                         ___/s/  Dorothy Babykin

13                         Dorothy Babykin

14

15    Date:  7/28/2023

16

17

18

19

20

21

22

23

24

25